EVERETT E. THOMAS AND DAWSON CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. WILLIAM KINGSLEY, ACTING DIRECTOR OF THE DIVISION OF TAXATION; UNION COUNTY BOARD OF TAXATION; G. ALDEN BARNARD, JAMES M. CRAWFORD AND CLARENCE POTTS, COMPRISING THE BOARD OF ASSESSORS OF THE TOWN OF WESTFIELD, DEFENDANTS-RESPONDENTS, AND NEW JERSEY MANUFACTURERS ASSOCIATION, AND NEW JERSEY STATE CHAMBER OF COMMERCE, DEFENDANTS-INTERVENORS.

Argued December 15, 1964—Decided January 5, 1965.

*Mr. Paul R. Williams, Jr.,* argued the cause for appellants (*Messrs. Dughi & Johnstone,* attorneys).

*Mr. Elias Abelson,* Deputy Attorney General, argued the cause for respondents Kingsley and Union County Board of Taxation (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Adrian M. Foley, Jr.,* argued the cause for defendant-intervenor New Jersey Manufacturers Association (*Messrs. Pindar, McElroy, Connell & Foley,* attorneys).

*Mr. Charles Danzig* argued the cause for defendant-intervenor New Jersey State Chamber of Commerce (*Mr. Morton R. Covitz,* on the brief; *Messrs. Riker, Danzig, Scherer & Brown,* attorneys).

*Mr. Norman N. Schiff* filed a brief on behalf of the City of Newark, *amicus curiae.*

The opinion of the court was delivered

PER CURIAM. This case involves the validity of *Chapter* 141 of the *Laws of* 1964 (herein *Chapter* 141). The subject is *ad valorem* taxation of property. In 1960 the Legislature enacted *Chapter* 51 of that year (herein *Chapter* 51), but later postponed the effective date of the tax reforms it would accomplish. That act is now to go into operation in January 1965. *Chapter* 141 modifies *Chapter* 51 for 1965 and 1966, and it is this modification which plaintiffs assail. The trial court upheld *Chapter* 141 (85 *N. J. Super.* 357) and we granted plaintiffs' petition for certification. *R. R.* 1:10–3.

A brief summary of the background will suffice. For more than a hundred years our statutes provided for the taxation of both real and personal property at true value. The statutory mandate was widely ignored, with resulting gross inequities as among the taxpayers of a given municipality and as well among the municipalities with respect to the costs of regional government and the allocation of certain State aid, which costs and aid were allocable to the municipalities on the basis of their aggregates of taxable ratables. With respect

to intermunicipal inequities, a statutory process of equalization of the aggregates of ratables provided an antidote to overcome the failure of the local assessors to comply with the tax laws. The more difficult problem was the unequal enforcement of the tax laws as among the individual taxpayers as to which nothing short of municipalwide revaluation and faithful adherence to the standard of value as to all categories of taxable property would suffice.

By reason of the age and depth of the problem, no one knew what would be the impact upon municipalities and their taxpayers if compliance with the basic tax laws were achieved. The sundry facets were discussed in the several opinions filed in *Switz v. Middletown Township*, 23 *N. J.* 580 (1957).

*Chapter* 51 was enacted to deal with the problem. It differentiated among real property and classes of personal property, to the end that the burden of government would fall upon each category to the degree the Legislature thought proper. *Chapter* 51 withstood various constitutional challenges, except in minor respects not here pertinent. *Switz v. Kingsley*, 37 *N. J.* 566 (1962).

As noted above, the effective date of *Chapter* 51 (except as to one section not here significant) was postponed. The reason was a sharp controversy as to the impact *Chapter* 51 would have upon the owners of different classes of property. No one knowing how much personal property would be taxed under *Chapter* 51, there was concern that *Chapter* 51 would lead to substantial shifts in tax burden to homes or to other real property or to personal property, any of which movements, if severe, could conceivably raise havoc with the local economy.

To get facts, the Legislature adopted *Chapter* 9 of the *Laws of* 1963 which required that confidential information returns be filed by owners of tangible personalty used in business. The Acting Director of the Division of Taxation analyzed 174,164 such returns. Of these, 132,326 were deemed usable for immediate purposes, and on the basis of them the Acting Director reported that *Chapter* 51 would lead to in-

creases in personal property assessments in 377 municipalities totaling $556,300,000 and to decreases in 190 municipalities totaling $422,716,000. *Kingsley, Report on Business Personal Property Information Returns Filed under Chapter 9, Laws of 1963* (Feb. 1, 1964), *p.* 25.

Against this backdrop, *Chapter* 141 was enacted. The statement annexed to the bill reads:

"Chapter 51 of the laws of 1960, as presently written, could severely shift the local tax burden to homeowners in some taxing districts and to businesses in others. It is desirable that the imposition of uniform standards of valuation and assessment be attained with a minimum of disruption.

To prevent property tax shifts within each district, this bill establishes a separate tax rate for business personal property within each taxing district and sets out the manner in which the tax rate shall be established.

The use of a separate tax rate on business personal property is viewed as a transitional device. Uniform assessment practices, once in effect, will provide accurate statistical data from the first year of operation. Having obtained accurate data, the Legislature will be in a position to know the amount of revenue required to return all property taxation to the general tax rate."

What *Chapter* 141 undertakes to do is to assure municipalities that the ratio of tax-dollar yield from tangible personal property used in business to the total tax yield from all property will be at least as great in 1965 and 1966 as it was in 1963. To that end, the statute provides that in each municipality the tangible business personalty shall be taxed in 1965 at the general tax rate or at the "adjusted personalty tax rate," whichever is higher. The adjusted personalty tax rate reflects the ratio of the taxes levied on such personal property to the total property taxes levied in 1963. As we understand *Chapter* 141, the general tax rate will apply in 1965 unless the ratio of the assessments of such business personal property to the total assessments of all property is less in 1965 than in 1963. For the year 1966, there are certain adjustments based upon 1965 experience which we need not state. *Chapter* 141 also amends *N. J. S. A.* 54:4-11(a) by reducing the taxable value of the tangible business property therein

described from the level of the taxable value of real property to 65% of that value. (This change is not limited to the years 1965 and 1966 and its validity is not questioned.)

██ We pause to state the scope of our role. We may not question the wisdom of this statute. The policy decision is the exclusive responsibility of the other branches of government. Our narrow authority is to determine whether the statute so plainly exceeds the constitutional power of the Legislature that we must adjudge it invalid.

Plaintiffs invoke both the equal protection clause of the Fourteenth Amendment to the Federal Constitution and the tax clause of our State Constitution.

 As to equal protection of the law, it is clear that within every municipality the owners of all tangible business property will be treated alike. Their treatment may not coincide with the treatment of real property, but equal protection does not forbid the separate classifications of property and the imposition upon each of a different tax rate. The Federal Constitution recognizes wide legislative discretion in deciding how the burden of government shall be allocated, and as long as there are relevant differences or legitimate aims to be achieved, the legislative judgment is final. *General Electric Co. v. Passaic*, 28 *N. J.* 499, 509–10 (1958). A classification which separates tangible personal property from other property is not inherently invidious, and this is so whether the resulting treatment is preferential or more burdensome than that accorded other property.

██ Here there is the additional feature that the rate to be imposed on such personalty in 1965 and 1966 may depend upon the experience within the municipality in 1963. In a sense, the resulting "classes" may be said to be those municipalities in which the adjusted personalty tax rate will be invoked and those in which it will not. This classification, if it be so viewed, denies neither equal protection nor due process if there is an adequate public need and the legislated treatment is reasonably appropriate to meet it. *New Jersey Restaurant Ass'n v. Holderman*, 24 *N. J.* 295, 300–02 (1957).

The Legislature found both that there is a public need and that the prescribed remedy is suitable. It apparently found a danger that a change from the disordered tax practices of the past to the plan of *Chapter* 51 might cause a distressing shift of the tax burden to homeowners in some taxing districts and to businesses in others; that a shift of any magnitude would injure important local interests; and that hence there should be some provisional technique to avoid that prospect. We cannot reject these legislative findings upon the record before us. The circumstance that the use of the adjusted personalty tax rate is only a transitional measure, to provide a buffer against public injury for a period of two years during which needed facts will be revealed, serves additionally to bring the statute within the broad power which the State Legislature may exercise over taxation without offending the Federal Constitution.

The next question is whether the statute, safe though it is from attack under the Federal Constitution, nonetheless runs afoul of the tax clause of our State Constitution. *Article* VIII, § I, ¶ 1 reads:

"Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, * * * and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district."

Plaintiffs do not question the power of the Legislature to treat real property and categories of personal property as separate classes and to decide what portion of the cost of government shall be borne by each class. *Switz v. Kingsley,* 37 *N. J.* 566 (1962). Nor do plaintiffs contend that *Chapter* 141 will result in unequal treatment of the owners of the same class of property so far as the burden of *municipal* government is concerned. What plaintiffs complain of is the allocation of the cost of *county* government. As to this, plaintiffs say that *Chapter* 141 will lead to unequal treatment as to the same category of property within the county, depending

upon whether the property is located in a municipality in which the adjusted personalty tax rate is used rather than the general tax rate. Plaintiffs say that this alleged inequality is prohibited by the tax clause.

Plaintiffs cite from 1 *Cooley on Taxation* (*4th ed.* 1924), § 311, *p.* 645:

"Uniformity of taxation, as provided for by state constitutions, is required throughout the territorial limits of the taxing district. If the tax is a state tax, it must be uniform throughout the state. If the tax is a county tax, it must be uniform throughout the county. If the tax is a town tax, it must be uniform throughout the town. If the tax is a city tax, it must be uniform throughout the city. If the tax is a school tax, it must be imposed throughout all the school district. The uniformity corresponds to the territorial limits of the taxing district."

The same thought is expressed in *State, Vail's Ex'rs v. Runyon*, 41 *N. J. L.* 98, 105 (*Sup. Ct.* 1879).

Plaintiffs refer also to *Switz v. Middletown Township, supra,* 23 *N. J.* 580, and particularly to the concurring opinion, and argue that that case stands for the proposition that a tax for county purposes must be applied equally throughout the county upon all taxable property. Actually that case did not involve the construction of our constitutional provision since the statute provided for the equal assessment of all taxable property, real and personal, and it was the statute that plaintiff there sought to enforce. The concurring opinion expressly noted it was the statute and not the Constitution that was thus involved (23 *N. J.,* at *pp.* 600 and 611). The point made was that under the existing statutory scheme calling for such uniform assessment, every taxpayer in the county had standing to sue to enforce the statute throughout the county, and this because the statute required the tax for county purposes to be levied throughout the county on all taxable property valued at true value. In other litigation in the wake of *Switz,* we again noted that enforcement was sought of "the existing statutory policy" and we spoke of "the statutory equality among taxpayers with respect to county taxes."

*Ridgefield Park v. Bergen County Board of Taxation*, 31 *N. J.*
420, 426, 431 (1960). Hence neither case bears upon the
construction of the constitutional command.

Nor is it necessary to decide in this case whether our
present tax clause requires anything more than municipal
wide equality with respect to the cost of county government
after that cost has been properly allocated among the munici-
palities.

 The reason we need not decide the question is that if
the tax clause should be read to require that a tax for county
purposes must be tested as if it were separately imposed, *i. e.,*
that the county tax rate upon property taxable for county
purposes must be the same throughout the county, still plain-
tiffs have failed to prove that *Chapter* 141 will lead to a
departure from that view. At the present time we cannot
even be certain that the adjusted personalty tax rate will
apply for 1965 or 1966 in any of the municipalities of Union
County. But more importantly, plaintiffs must show that the
use of the adjusted personalty tax rate will reduce the tax
rate imposed on other taxable property to a figure less than
the county rate or will impose upon business tangibles a tax
for county purposes in excess of the county rate. That showing
has not been made.

In this discussion we must keep in mind that the county
tax burden has been equitably allocated as among the munici-
palities.

We think it evident that if municipality A uses the adjusted
personalty tax rate, that use cannot affect the tax treatment
of property within municipality B. Rather the use of the
adjusted personalty tax rate in a given municipality can
affect only the tax treatment of property within that same
municipality, and accordingly the claimed departure from a
uniform county rate must be found, if at all, in such a
municipality.

 Plaintiffs have not established that the use by a munici-
pality of the adjusted personalty tax rate will lead in that
municipality to taxation for county purposes at a rate other

than the established county tax rate. The imposition of the adjusted personalty tax rate on business tangibles will of course reduce the tax rate on other property in the municipality, but to raise the constitutional issue, it must be shown that the reduced rate will be less than the county tax rate and this cannot be found in the record before us. To illustrate, if the county tax rate is $1.80 per $100 assessed valuation and the total general tax rate is $6.20 per $100 assessed valuation, it would have to be shown that the imposition of the adjusted personalty tax rate on business tangibles would reduce the tax rate upon other categories of property below $1.80. Unless the reduction is of that magnitude, the difference in treatment of these several categories of property is equally referable to that part of the total tax rate as represents the municipality's other costs, and, as already pointed out earlier in this opinion, there is no constitutional impediment against different treatment of these categories of property within a given municipality as to the burden of municipal government. And for the same reason, so much of the adjusted personalty tax rate upon business tangibles as exceeds the tax rate on other taxable property in the municipality must be deemed referable to the needs of municipal government rather than to the burden of county government. The intendment in favor of constitutionality requires the judiciary to take the view of the tax that will sustain it.

Accordingly plaintiffs have not sustained their heavy burden of overcoming the presumption of constitutionality. We repeat that whether *Chapter* 141 is otherwise equitable or inequitable, prudent or imprudent, is a matter to be decided exclusively by the legislative and executive branches.

The judgment is affirmed. No costs.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.