NEW JERSEY BELL TELEPHONE COMPANY, PLAINTIFF, v. LAUREL SPRINGS BOROUGH, DEFENDANT.

Tax Court of New Jersey

December 4, 1980.

---

*Leigh E. Buggeln* for plaintiff.

*George J. Botcheos* for defendant (*Laskin & Botcheos*, attorneys).

LARIO, J. T. C.

New Jersey Bell Telephone Company appeals from a judgment of the Camden County Board of Taxation affirming a tangible personal property assessment, as of January 1, 1976, of an electronic switching machine levied under *N.J.S.A.* 54:4–1. Plaintiff does not contest the $1,069,797 assessed value of the equipment; the sole issue is whether the equipment was assessable on January 1, 1976. The facts, which are not in dispute, were stipulated substantially as follows:

Plaintiff, a public utility telephone company, owns and operates a central office building in Laurel Springs Borough.

On a periodic basis, plaintiff conducts surveys of present and reasonable prospective telephone needs of subscribers served by each of its 206 central offices in the State of New Jersey. Following one such survey, plaintiff determined it needed additional switching facilities at its Laurel Springs office. As a result an equipment order for an electric switching system with Western Electric Company was authorized by plaintiff on December 19, 1974.

The purpose of the additional switching equipment was to provide relief for the soon to be exhausted equipment, identified as # 5 crossbar machine. The relief plan involved transfer of subscribers' lines using group # 772 from the # 5 crossbar machine to the new equipment together with a new group # 435, both of which would utilize the new equipment.

Installation of the equipment was to begin on May 12, 1975 and it was scheduled to be completely installed by November 16, 1975, entitled the "turnover date," at which time the equipment was to be turned over to plaintiff's employees for service and preparation for use.

The date which plaintiff's employees were scheduled to finish their work in order to make the equipment operable was tentatively set for January 18, 1976; however, it was finally set for January 11, 1976. This latter date, entitled the "cutover date," was the time when the equipment would be fully operable for use by plaintiff's subscribers.

From the date of "turnover" to the date of "cutover," plaintiff's employees performed such tasks as connecting and testing trunk lines to the equipment; connecting and testing connections of subscribers' lines; data input and testing data entered in the machine; testing of billing accuracy; testing its capability; and, testing emergency actions and procedures.

The final "cutover date," when subscribers' lines in the 772 call group to the # 5 crossbar machine were disconnected and reconnected to the subject equipment, occurred on January 11, 1976.

The subject property was assessed based upon *N.J.S.A.* 54:4–1, which was amended in 1966 limiting taxable personal property thereunder to ". . . only tangible goods and chattels, exclusive of inventories, used in business of telephone, telegraph and messenger systems, companies, corporations or associations sub-

ject to tax under Chapter 4, laws of 1940 as amended[1] ..."
*N.J.S.A.* 54:4–1.

*N.J.S.A.* 54:4–2.46 provides: "The true value of tangible personal property used in business subject to taxation shall be determined ... as of January 1 annually ..."

Plaintiff does not deny that its property is assessable, but it does contest the beginning assessing date, claiming it may not be assessed until January 1, 197*7* instead of 197*6*. In order to resolve the issue of whether the equipment was assessable on January 1, 1976, it must be determined whether the term "used in business" as set forth in *N.J.S.A.* 54:4–1, *supra*, requires that the tangible personal property be merely held for use or that it actually be in use and operation for telephone purposes as of the assessing date.

Defendant interprets the phrase "used in business" to mean "held for such use," therefore, ownership and possession of said equipment within its municipality as of January 1, 1976 was sufficient basis for levying its assessment.

Plaintiff contends the intent of this provision is to tax only that property which is actually used in operation in plaintiff's business and until such use the tangible personal property is not taxable. In support of its position, plaintiff argues that by the enactment of *N.J.S.A.* 54:4–2.52 in 1966, which included therein a repeal of *N.J.S.A.* 54:4–11, the Legislature also repealed the definition included therein which stated: "The term 'used in business' shall mean used in any activity, transaction or privilege engaged in, conducted or exercised for gain or profit, or held for such use."

The legislative statement attached to *L.* 1966, *C.* 138 § 1, which became the amendment to *N.J.S.A.* 54:4–1, *supra*, casts no light on this issue; however, the history of personal property taxation in New Jersey and an examination of the events leading to the adoption thereof and our present personal proper-

---

[1]*Chapter 4, Laws* 1940, refers to *N.J.S.A.* 54:30A–16, *et seq.*, which imposes a franchise tax upon telephone, telegraph and messenger companies.

ty tax laws discloses the following: For over 100 years in New Jersey the standard of value for the assessment of all property, real and personal, was true value [2], however, this mandate was uniformly ignored; real estate was regularly assessed below true value and personal property at a mere fraction thereof or not at all.

By our 1947 Constitution [3], this standard was changed to require that property shall be "assessed for taxation under general laws and by uniform rules." Although this constitutional change permitted different legislative treatment of personal property from that accorded real property, and did not require all personal property to be assessed at the same standard of value, our statutes relating to personal property taxation in existence in 1947 were not immediately changed. For more than ten years after the present Constitution's adoption, our statutes continued to mandate that both real and personal property be assessed at true value. *N.J.S.A.* 54:4-1, as amended.

The local assessor was ordered to annually ascertain and tax at its true value all tangible personal property, except as otherwise provided, found within his taxing district. *N.J.S.A.* 54:4-9 and 54:4-12.

Although these statutory requirements for true value taxation for all property remained in effect, they were still widely disregarded. Finally, by reason of the gross inequities to taxpayers resulting from the unequal treatment of our tax laws, in March 1957 New Jersey municipalities were directed by our Supreme Court to comply with the tax laws as they existed, e. g.: assess real and personal property at true value.

> And the local authorities are admonished that the current assessment statutes, *ante,* place real and personal property in the one category, to be assessed at 'true value.' The assessment of real property at full value and tangible personal property at less would violate the statutory rule of equality. *Switz v. Middletown Tp.*, 23 *N.J.* 580, 599, 130 *A.2d* 15 (1957).

---

[2] *N.J.Const.* (1844, amended 1875) Art. IV, § VII, par. 12.

[3] Art. VIII, § I, par. 1.

However, by reason of the general disregard the full true value standard and the age and depth of the problem, the court recognized no one knew what would be the impact upon municipalities and taxpayers if compliance with the basic tax laws were achieved and that the problems caused thereby could not be resolved overnight; therefore, the court modified its order requiring full true value assessments so that it would not apply to the ensuing two tax years in order to afford the Legislature an opportunity to deal with the problem, *Id.*, 598, 130 *A.2d* 15; see also *Thomas v. Kingsley*, 43 *N.J.* 524, 206 *A.2d* 161 (1965).

In 1960 the Legislature enacted a new property tax law, *L.* 1960, *c.* 51 (Chapter 51) to become effective for the tax year 1962. It was an extensive revision affecting both real and personal property.[4]

Since it was not known how much personal property would be taxed under *Chapter* 51, nor its impact upon the owners of different classes of property, there was great concern that its enforcement as enacted would cause substantial shifts of the tax burden to homes and to other property leading to possible economic havoc. As a result, the Legislature postponed the effective date of *Chapter* 51 on three occasions [5] while it conducted additional studies.

Prior to the adoption of *Chapter* 51, *N.J.S.A.* 54:4–9 provided for the taxation of *all* tangible personal property within this State, in and for the taxing district where found. *Chapter* 51

---

[4]Chapter 51 included authorization for real property assessment ratios to be applied uniformly within each county. One of the most significant changes concerned the standard of assessment with respect to tangible personal property used in business which was changed from "true value" to "fair value" and establishment of an accounting basis for the assessment thereof. It also eliminated household property valuations from the aggregate valuations in determination of the local tax rate base and in the apportionment of county government costs; and it permitted the complete elimination of the household property tax at the option of each municipality.

[5]*L.* 1961, *c.* 14 postponed effective date to 1963; *L.* 1962, *c.* 20 postponed effective date to 1964; *L.* 1963, *c.* 9 postponed effective date to 1965.

changed this section completely and by *Section* 7 thereof provided that:

> Taxable personal property *used in business* and subject to taxation in this State shall be assessed and taxed at its taxable value as defined by law, at the general tax rate of the taxing district wherein such property is found, for the use of such taxing district, in the manner provided by this article. *N.J.S.A.* 54:4–9. [Emphasis supplied]

*Section* 8 thereof set forth the percentage levels of taxable values of tangible personal property used in business and it also defined the terms "used in business" (as hereinabove set forth) and also "common level." *N.J.S.A.* 54:4–11, *supra.*

Thus, by the adoption of *Chapter* 51, our Legislature for the first time eliminated the requirement that all personal property be taxed; however, among the other personal property taxes, it did retain a tax on tangible personal property "used in business" and it defined said property as "held for such use." *Sections* 7 and 8.

In order to alleviate the aforesaid uncertainties of the possible tax shift thereunder, and to help lessen its impact upon municipalities and their taxpayers, *Chapter* 51 was modified by *Chapters* 140 and 141 of the *Laws* of 1964 (*Chapter* 140 and *Chapter* 141). *Chapter* 140 directed:

> The fair value of tangible personal property *used in business* shall be presumed to be the *net book value thereof as shown by the books and records* of the person assessed as of the listing date; . . .; and, provided that so long as any depreciable property shall remain in use or *be held for use* its fair value shall be presumed to be not less than 20% of its original cost. . . ." [Emphasis supplied]

*Chapter* 141 provided, among other changes, for a dual tax rate on personalty and contained within it a two–year limitation. At the time Gov. Richard J. Hughes signed *Chapter* 141 into law, he issued the following formal statement:

> In my opinion, the business personalty tax is not a desirable one because it is not a fair measure of business's capacity to pay. Everyone realizes, however, that a tax which now produces approximately $100 million in revenue, cannot be eliminated without providing a replacement source or so reshuffling the tax burden so as to cause extreme hardship on the other local property taxpayers. Since a forthright attack upon the basic inequity of this tax is not feasible at this time, these amendments appear to be the only solution upon which the Legislature is capable of agreeing. Some people question whether the amendments will greatly assist many sectors of our business community, but I cannot ignore the fact that it will obviously assist many other businesses at the same

time that it provides, for at least two years, the essential protection to the homeowner that I have always demanded. I have described the two year limitation on the dual tax rate provisions of these bills as a 'time bomb.' If action is not taken by the Legislature within this period, there will be a tax explosion in some of our major municipalities which may seriously affect our homeowners. The Legislature has stated it will move to meet this problem. I intend to use all my powers to see that it does.

I am, therefore, taking the precaution of preparing to name a representative Governor's Committee on Local Property Taxation. This Committee will assume the responsibility of surveying the impact of *Chapter* 51 throughout the State and of preparing such suggested modifications or changes as may be deemed desirable.

The Governor's Committee appointed in accordance therewith recommended a sweeping tax revision which included the enactment of a completely new program whereby the widely varying personal property tax administered at the local level would be replaced by a combination of new taxes to be uniformly administered and collected at the state level. *State of New Jersey, Report of the Governor's Committee on Local Property Taxation*, submitted December 15, 1965. However, at p. 53 of its report, it included the following recommendation:

... the local business personal property tax is now raising approximately $119 million throughout the State. This figure includes the $22 million which is being derived from the taxation of personal property owned by telephone and telegraph companies. The telephone and telegraph companies have suggested that the taxation of their personal property *remain* on a local basis. Considering the special nature of these companies, it appears to be a desirable suggestion. The amount raised from this source, therefore, has not been involved in our discussion of replacement revenues. As a result, an alternative tax program would have to raise approximately $97 million to replace the personal property tax. [Emphasis supplied].

The replacement tax program recommended an anticipated $97.5 million of replacement tax revenues which approximated the amount of personal property tax paid by all businesses in 1965, exclusive of telephone and telegraph companies. The Committee further recommended that the replacement tax revenues be distributed to local taxing districts subject to a "save harmless" provision assuring each district no less than it received from personal property taxes in 1964 and 1965, whichever was the greater. The Legislature accepted the essential recommendations of the Committee and adopted into law, *L.* 1966, *c.* 136 and *c.* 138, (*Chapter* 136 and *Chapter* 138), which constitutes

our present property tax laws, *N.J.S.A.* 54:4–1, *et seq.*, as amended.

The above history of our tax laws discloses that for over a hundred years *all* personal property (with some minor exceptions which are not pertinent to this issue) was taxable in New Jersey. No distinction was made as to how the property was held, its mere ownership and existence on the assessing date subjected tangible personal property to taxation. It was not until 1960 by the adoption of *Chapter* 51 that an attempt was made to eliminate or vary the taxes on tangible personal property. However, by its adoption, the Legislature specifically did not eliminate tangible personal property used in business from personal property subject to taxation; nor was any change made as to the manner in which personal property was held in order to subject it to taxation. By defining in *Section* 8 of *Chapter* 51 (*N.J.S.A.* 54:4–11, *supra*) the term "used in business" to mean "held for use," the Legislature did not change existing law since prior thereto all tangible personal property found within a district was taxable. *Section* 8 merely distinguished "used in business" personal property from "non business" personal property, such as household property, etc. In *Chapter* 140 the definition of "used in business" as "held for use" was retained and its "fair value" determination was further denied.

At the time *N.J.S.A.* 54:4–1 was amended in 1966 thereby limiting the taxation of personal property thereunder to tangible personal property of telephone companies, the mere ownership of tangible personal property by a telephone company, subjected said property to be assessable within the community where found on cne assessing date.

Throughout the *Report of the Governor's Committee, supra*, at pp. 52 and 53, it is clear that the new "replacement taxes" recommended by it were not designed to extract either additional or less revenue from the business community; they were intended to provide a new program under which the business community as a whole would pay substantially the same amount of revenue previously derived from the local taxes on tangible

personal property. (See also, *State of New Jersey, Annual Report of the Division of Taxation in the Department of the Treasury, for the Tax Year 1966*, at p. 2A.)

In adopting the *Governor's Committee's Report, supra*, it is obvious that the Legislature did not intend to tax less telephone business personal property or to reduce the taxable income of any municipality after 1968 to below that personal property tax income received for the years immediately prior thereto.

Originally, *N.J.S.A.* 54:4–11 established taxable values of tangible personal property used in business as of the first day of each January based on the use of percentage levels, and included therein were the definitions of "used in business" and "common level." By adopting *Chapter* 138, the Legislature changed the method of establishing taxable values of business tangible personal property from use of percentage levels to a ratio formula, therefore, it repealed *N.J.S.A.* 54:4–11,[6] replacing it with the new ratio formula set forth in *N.J.S.A.* 54:4–2.47.

It is clear that the Legislature's purpose in repealing *N.J.S.A.* 54:4–11 was to remove completely the method contained therein of taxing various types of personal property as listed in *Sections* A, B and C thereof, and in so doing it naturally repealed the definitions contained therein. By repealing *N.J. S.A.* 54:4–11 *in toto*, it cannot be presumed that the Legislature intended by innuendo to thereby lessen the amount of property assessable under *N.J.S.A.* 54:4–1.

*N.J.A.C.* 18:9–2.2(c)[7] cited by plaintiff to lend support to its interpretation of *N.J.S.A.* 54:4–1, as amended, is misplaced.

---

[6]*N.J.S.A.* 54:4–11 was expressly repealed by *N.J.S.A.* 54:4–2.52.

[7]Regulation *N.J.A.C.* 18:9–2.2(c) states:

The phrase 'used or held for use in any business,' in *N.J.S.A.* 54:11A–2(b) does not include the following personal property:

(1) Machinery or equipment which is either under construction or being installed as a part of a new or existing plant or facility, and not in operation or capable of operating in the business for which it was acquired; . . .

Contemporaneously with the adoption of the 1966 amendment to *N.J.S.A.* 54:4–1 taxing telephone company tangible personal property, the Legislature enacted the Business Personal Property Tax Act, *L.* 1966, *c.* 136 § 1 (*N.J.S.A.* 54:11A–1, *et seq.*) which provided for taxation of tangible personal property used in businesses not covered by the 1966 amendment.

The above regulation was adopted by the Acting Director, Division of Taxation two years after the date of the applicability of the taxes imposed by both *N.J.S.A.* 54:4–1, as amended, and the Business Personal Property Tax Act of 1966. The regulation specifically applies solely to property taxed under the Business Personal Property Tax Act as defined in *N.J.S.A.* 54:11A–2(b). It fails to mention property covered by *N.J.S.A.* 54:4–1, as amended. This failure cannot be presumed to be an oversight.

In promulgating this regulation, the Director obviously sought to diminish the personal property tax *payable to the State* by businesses in order to encourage businesses to locate in New Jersey and to invest in machinery and equipment. His action affected solely taxes collectable by the State and he did not attempt to lessen the amount of taxes collectable by municipalities, a right granted to them by the Legislature.

In considering the overall scheme of the new "replacement taxes," I cannot read therein that the Legislature intended to reduce the amount of personal property that was taxable as of that date to telephone, telegraph and messenger companies. In fact, by specifically excluding telephone, telegraph and messenger companies in its 1966 amendment to *N.J.S.A.* 54:4–1, the Legislature indicated a clear intention not to change these companies' mode of taxation under this act. If a change were intended, the Legislature could very easily have defined this change within its amendment, which it did not do; therefore, by its failure to do so therein, it did not change the meaning of "used in business."

I conclude that the phrase "used in business" as set forth in *N.J.S.A.* 54:4–1, *supra* is a term of description, referring to

the type of property utilized in telephone, telegraph and messenger systems businesses and it applies to all tangible property owned and held for use; it does not mean *actually in use.* Since the equipment in issue was owned and held for use by the plaintiff in its Laurel Springs central office on January 1, 1976, said property was assessable as of said date.

Judgment will be entered affirming the judgment of the Camden County Board of Taxation.