31 A.3d 958 (2011)
423 N.J. Super. 210
NEW PROVIDENCE APARTMENTS CO., L.L.C., New Providence Gardens Co., L.L.C., New Providence Mews, L.L.C., and Murray Hill Apartments Co., L.L.C., Plaintiffs-Appellants, and
Tower Management Financing Partnership, L.P. and Tower Spring Gardens, L.L.C., Plaintiffs,
v.
MAYOR AND COUNCIL OF BOROUGH OF NEW PROVIDENCE and Borough of New Providence, Defendants-Respondents.
No. A-2924-10T4.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 2011.
Decided December 1, 2011.
*959 Bruce H. Snyder argued the cause for appellants (Lasser Hochman, L.L.C., attorneys; Mr. Snyder, of counsel and on the briefs; Ryan M. Buehler, Roseland, on the briefs).
Carl R. Woodward, III, argued the cause for respondents (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Mr. Woodward, Brian H. Fenlon, Roseland, and Vincenzo M. Mogavero, on the brief).
Before Judges PARRILLO, GRALL and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
A municipal governing body has the option of funding sanitary sewer services either from general municipal revenues obtained by real estate taxes or from fees imposed upon property owners who use the sewer system. If a governing body chooses to fund its sewer system through user fees, it must comply with the mandate of N.J.S.A. 40A:26A-10 that such "fees . . . shall be . . . uniform and equitable for the same types and classes of use and service of the facilities."
The Borough of New Providence had historically funded its sanitary sewer services solely from general municipal revenues obtained by real estate taxes. However, its governing body determined in 2009 that, under this system of funding, owners of single-family homes were paying a disproportionate share of the costs of the *960 sewer system compared to owners of apartment buildings. Specifically, the borough administrator determined that the owner of an average single-family home pays approximately $2400 in municipal taxes, approximately $240 of which is allocated to sewer service, while the average owner of a garden apartment pays approximately $350 in municipal taxes per unit, approximately $35 of which is allocated to sewer service. To reduce this disparity, the governing body adopted an ordinance under which owners of apartments are required to pay an annual sewer user fee of $100 for every apartment unit in excess of two.
This appeal requires us to decide whether the ordinance establishing this new hybrid system of funding, under which the costs of the New Providence sewer system are paid partly from general municipal revenues obtained by real estate taxes and partly from user fees, violates either N.J.S.A. 40A:26A-10 or the equal protection guarantees of the United States and New Jersey Constitutions. We conclude that the challenged New Providence ordinance is consistent with N.J.S.A. 40A:26A-10 and is constitutional.

I.
Plaintiffs are the owners of apartments in New Providence that use the municipal sewer system. New Providence Apartments Co. and New Providence Gardens Co. own a 232-unit apartment complex known as New Providence Gardens; Murray Hill Apartments Co. owns a 172-unit apartment complex known as Murray Hill Apartments; and New Providence Mews owns a twenty-two unit apartment complex. These three apartment complexes contain more than half of the apartment units in New Providence. Pursuant to New Providence's new hybrid system of funding sewer service, enacted as Ordinance 2009-6, under which a $100 sewer user fee is imposed upon each unit of residential housing in excess of two,[1] New Providence Gardens will incur annual fees of $23,000; Murray Hill Apartments will incur annual fees of $17,000; and New Providence Mews will incur annual fees of $2,000.
Shortly after the adoption of Ordinance 2009-6 and a companion ordinance establishing the mechanism for collection of the sewer user fee, plaintiffs filed this action challenging its validity on both statutory and constitutional grounds. Plaintiffs' complaint included counts asserting claims under the Federal Civil Rights Act, 42 U.S.C.A. § 1983, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. New Providence filed a pretrial motion to dismiss those counts, which the trial court granted.
The court conducted a two-day trial on the remaining counts. To the extent relevant to the issues presented by this appeal, the testimony presented at that trial is discussed in sections II and III of this opinion.
Following the trial, the trial court issued an oral opinion upholding the validity of the $100 per apartment sewer user fee. In rejecting plaintiffs' statutory and constitutional arguments, the court stated:
. . . [A]s long as ordinances represent a well-reasoned policy decision to equalize the municipal cost of providing sanitary sewer services to all users of the systems, a municipality may treat users in different classes differently at its discretion.

*961 ....
... Defendants established in their submissions and through testimony that the average single family home contributes $230[2] to the sewage budget, whereas the average Garden Apartment unit dweller contributes only $35 per unit.... Thus Garden Apartments contribute approximately 15 percent of the amount contributed by single family users to the maintenance and operation cost of the borough's sanitary sewer system. Even with the $100 per unit fee imposed by the ordinances, Garden Apartments will only contribute 59 percent of what the average single family user contributes.
....
... The court finds that the testimony that was presented by New Providence through its witnesses ... provide[s] the court with enough information to indicate that the ordinances were not developed or passed in an irrational fashion.
Plaintiffs appeal from the final judgment memorializing this decision.

II.
The statutory authority for a municipality to charge sewer user fees is provided by N.J.S.A. 40A:26A-10, which states in pertinent part:
After the commencement of operation of sewerage facilities, the local unit ... may prescribe and, from time to time, alter rates or rentals to be charged to users of sewerage services. Rates or rentals being in the nature of use or service charges or annual rental charges, shall be uniform and equitable for the same types and classes of use and service of the facilities.... Rates or rentals and types and classes of use and service may be based on any factors which the governing body ... of that local unit ... shall deem proper and equitable within the region served.
Our courts have long recognized that under N.J.S.A. 40A:26A-10 and a similar statutory provision governing sewerage authorities (N.J.S.A. 40:14A-8(b)), courts have only a "limited role" in reviewing the charges imposed for sewer service. Meglino v. Twp. Comm. of Eagleswood, 103 N.J. 144, 152, 510 A.2d 1134 (1986). "An ordinance establishing [such] rates will be upset only if patently unreasonable." Ibid. (quoting H.P. Higgs Co. v. Borough of Madison, 188 N.J.Super. 212, 222, 457 A.2d 43 (App.Div.), certif. denied, 94 N.J. 535, 468 A.2d 188 (1983)).
This judicial deference to municipal decision-making relating to the funding of sewer service includes a governing body's determination of whether particular "types and classes of use and service" are "the same" within the intent of N.J.S.A. 40A:26A-10. Thus, in Piscataway Apartment Ass'n v. Township of Piscataway, 66 N.J. 106, 109, 328 A.2d 608 (1974), the Court held that "a municipally owned sewer utility may reasonably fix the same dwelling unit sewerage use charge for all single-family occupancy units, whether in large apartment houses, smaller multiple rental buildings or single-family residences," even though those "different categories of housing" have different "average sewerage flows," because the decision to treat the different forms of housing as the same class of use and service was "free from patent unreasonableness." Similarly, in Phoenix Associates, Inc. v. Edgewater *962 Park Sewerage Authority, 178 N.J.Super. 109, 117-22, 428 A.2d 508 (App.Div.1981), aff'd o.b., 89 N.J. 2, 444 A.2d 51 (1982), we rejected an argument that a sewerage authority was required, in establishing sewer use charges, to recognize that one-and two-bedroom apartments are a different "type" or "class" of "use or service" than single-family residences with three or more bedrooms. In reaching this conclusion, we observed that "[w]hile [a sewerage] authority may consider the apparent differences between apartments and single-family dwellings and provide a different rate for them, the authority is not mandated to do this." Id. at 121, 428 A.2d 508; accord Ocean Seniors, L.L.C. v. Twp. of Ocean Sewerage Auth., 395 N.J.Super. 349, 354-57, 928 A.2d 929 (App.Div.2007).
It is clear under Piscataway Apartment Ass'n and Phoenix Associates that a municipality has discretionary authority to treat both single-family houses and apartment buildings as part of "the same types and classes of use and service" or as two different types and classes of use and service. Thus, if New Providence had chosen to completely abandon its historical system of funding sewer services solely through municipal revenues obtained from real estate taxes and instead to fund sewer services solely through user fees established in accordance with N.J.S.A. 40A:26A-10, it could have imposed the same per unit user fee on both single-family houses and apartment buildings. In that event, the uniform sewer user fee for each residential unit would have been more than $200.[3] Such a uniform user fee would have been substantially more than the combination of the $100 user fee for each apartment unit imposed under Ordinance 2009-6 and the approximately $35 per unit allocable portion of their municipal real estate taxes apartment owners now pay for sewer service. Thus, the hybrid system for funding sewer service adopted by New Providence through Ordinance 2009-6 results in a smaller aggregate imposition upon apartment owners than would be imposed under a pure user fee system, which is clearly authorized by N.J.S.A. 40A:26A-10.
Moreover, the aggregate of the $135 paid by apartment owners under the $100 user fee imposed by Ordinance 2009-6 and the $35 allocable share of their municipal real estate taxes is only 56.2% of the $240 that the average owners of single-family houses pay for sewer service through real estate taxes. This contribution to the cost of operation of the sewer system by apartment owners closely approximates the relative usage of sewer service by apartment dwellers, which the testimony at trial indicates *963 is 57.3% of the usage of owners of single-family houses. Therefore, we do not perceive any basis for concluding that this hybrid system of funding sewer service is "patently unreasonable." Meglino, supra, 103 N.J. at 152, 510 A.2d 1134.
Plaintiffs argue that even though N.J.S.A. 40A:26A-10 allows a municipal governing body to treat single-family houses and apartment buildings as different "types and classes of use and service," the only factor a governing body may consider in establishing sewer rates is the usage of the system by each class of user. However, N.J.S.A. 40A:26A-10 does not limit the governing body's exercise of discretion in establishing sewer rates solely to consideration of usage. N.J.S.A. 40A:26A-10 specifically states that "[r]ates or rentals and types and classes of use and service may be based on any factors which the governing body ... shall deem proper and equitable within the region served." Thus, the Legislature has delegated authority to a municipal governing body to consider not simply usage but any other factor the governing body "deem[s] proper and equitable" in establishing both "types and classes of use and service" and "rates or rentals."[4] In our view, it was not patently unreasonable for the New Providence governing body to conclude that the fact owners of single-family residences pay substantially more for sewer service through real estate taxes than owners of apartments makes it "proper and equitable" to impose a sewer service fee solely upon apartment owners to reduce the disparity between these classes of property owners' contributions to the costs of sewer service.
Plaintiffs also argue that if a municipality is allowed to impose a user fee solely upon apartment owners to reduce the disparity in their contributions to the costs of operation of the sewer system compared to owners of single-family homes, a municipality could impose a similar user fee for schools, road maintenance, police and other municipal services. However, there is no statutory authority for the imposition of user fees for those basic municipal services. By enacting N.J.S.A. 40A:26A-10, the Legislature made a policy determination that municipalities should be allowed to fund sewer services differently than other municipal services.
A municipality's exercise of this authority may not be disturbed unless it is shown to have been "patently unreasonable." Meglino, supra, 103 N.J. at 152, 510 A.2d 1134. Plaintiffs have not made this showing with respect to Ordinance 2009-6.

III.
We turn now to the question whether Ordinance 2009-6 violates the equal protection guarantees of the United States and New Jersey Constitutions by imposing a sewer user fee upon owners of apartments *964 that is not imposed upon owners of single-family homes.
A legislative body has broad discretion in determining how to raise the revenue required to carry out governmental responsibilities. See Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 461-65, 108 S.Ct. 2481, 2489-91, 101 L.Ed.2d 399, 411-14 (1988); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 40-41, 93 S.Ct. 1278, 1300-01, 36 L.Ed.2d 16, 47 (1973); Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359-65, 93 S.Ct. 1001, 1003-06, 35 L.Ed.2d 351, 354-58 (1973); Drew Assocs. of NJ, LP v. Travisano, 122 N.J. 249, 264, 584 A.2d 807 (1991). The Supreme Court of the United States has recognized that "[n]o scheme of taxation... has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause." Rodriguez, supra, 411 U.S. at 41, 93 S.Ct. at 1301, 36 L.Ed.2d at 48. Therefore, in the field of taxation, "the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." Id. at 41, 93 S.Ct. at 1301, 36 L.Ed.2d at 47 (quoting Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940)). Under this deferential standard of review, "inequalities which result from a singling out of one particular class for taxation ... infringe no constitutional limitation." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 1253 (1937); see also Gen. Elect. Co. v. City of Passaic, 28 N.J. 499, 509-10, 147 A.2d 233 (1958).
Similarly, our Supreme Court has recognized that "[i]n the field of taxation states are given `large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' Indeed, a strong presumption of constitutionality attends the legislative classification and the party challenging it must negate `every conceivable' basis for the statute[.]" Drew Assocs., supra, 122 N.J. at 264, 584 A.2d 807 (quoting Mueller Estate v. Transfer Inheritance Tax Bureau, 5 N.J.Tax 642, 650-51 (Tax Ct.1983)); see also McKenney v. Byrne, 82 N.J. 304, 316-17, 412 A.2d 1041 (1980); Thomas v. Kingsley, 43 N.J. 524, 530, 206 A.2d 161 (1965).
Under the equal protection guarantees of both the United States and New Jersey Constitutions, the only question is whether a legislative classification related to the imposition of a tax "bear[s] some rational relationship to legitimate state purposes," Rodriguez, supra, 411 U.S. at 40, 93 S.Ct. at 1300, 36 L.Ed.2d at 47, or as expressed by our Supreme Court, is "rationally related to the achievement of a legitimate state objective[,]" Drew Assocs., supra, 122 N.J. at 264, 584 A.2d 807.
This same rational relationship test applies to an equal protection challenge to a user fee. Kadrmas v. Dickinson Pub. Schs., supra, 487 U.S. at 461-63, 108 S.Ct. at 2489-90, 101 L.Ed.2d at 411-12; Baldwin v. Montana Fish & Game Comm'n, 436 U.S. 371, 388-91, 98 S.Ct. 1852, 1862-64, 56 L.Ed.2d 354, 368-70 (1978); N.J. State Bar Ass'n v. Berman, 259 N.J.Super. 137, 145-46, 611 A.2d 1119 (App.Div.1992); Warrenville Plaza, Inc. v. Warren Twp. Sewerage Auth., 230 N.J.Super. 461, 469-70, 553 A.2d 874 (App.Div.1989).
The $100 per residential unit sewer user fee New Providence imposes upon the owners of apartments satisfies this rational relationship test. As discussed in *965 section II of this opinion, the portion of real estate taxes paid by apartment owners allocable to sewer service is an average of only $35 per apartment while the portion of single-family homeowners' real estate taxes allocable to sewer service is an average of approximately $240 per home. The New Providence governing body's objective in imposing a $100 sewer user fee upon apartment owners was to reduce this disparity between owners of single-family houses and owners of apartments in paying for the costs of operation of the municipal sewer system. Moreover, the combination of the $100 user fee and the approximately $35 per apartment unit obtained from real estate taxes results in an aggregate contribution by apartment owners to operation of the sewer system approximating their actual usage of the system, which is approximately 40% less than the usage of single-family homes.
We recognize that there are legitimate policy questions concerning the extent to which government services should be funded by user fees rather than general revenues obtained from sources such as real estate taxes, which are largely dependent upon taxpayers' wealth. However, we perceive nothing irrational in New Providence's decision to fund sewer service partly from a user fee and partly from general revenues derived from real estate taxes. Moreover, in view of the substantial disparity in the allocable portion of their real estate taxes contributed to operation of the sewer system by owners of single-family homes and apartment owners, we perceive nothing irrational in the imposition of the user fee solely upon owners of apartments.
In arguing that the New Providence sewer user fee violates the Equal Protection Clauses of the United States and New Jersey Constitutions, plaintiffs rely primarily upon our decision in WHS Realty Co. v. Town of Morristown, 323 N.J.Super. 553, 733 A.2d 1206 (App.Div.), certif. denied, 162 N.J. 489, 744 A.2d 1211 (1999), which held that a municipal ordinance authorizing garbage collection services to single-family homes and certain other residences, but excluding apartments from this service, violated the Equal Protection Clauses of the United States and New Jersey Constitutions. See also 399 Lincoln Assocs. v. City of Orange Twp., 244 N.J.Super. 238, 241-45, 581 A.2d 1364 (App.Div.1990); Boulevard Apts., Inc. v. Mayor & Council of Lodi, 110 N.J.Super. 406, 411, 265 A.2d 838 (App. Div.), certif. denied, 57 N.J. 124, 270 A.2d 27 (1970). However, WHS Realty involved the right of equal access to municipal services rather than an equal protection challenge to the method of funding those services. Moreover, although there is statutory authority for a municipality to impose a user fee to fund garbage collection services, see N.J.S.A. 40:66-5, the collection services involved in WHS Realty were funded solely out of general municipal revenues obtained from real estate taxes, see 323 N.J.Super. at 571-72, 733 A.2d 1206. Thus, the question in WHS Realty was whether there was a rational basis for withholding a municipal service funded out of general tax revenues from a class of taxpayers. The court concluded that there was no such rational basis, stating that "there is nothing about the mechanics or costs of solid waste collection that justifies differentiating between apartment complexes and other residences within the community." Id. at 564, 733 A.2d 1206.
The funding of the New Providence sewer system, unlike the funding of municipal garbage collection involved in WHS Realty, is not provided simply from "the [municipality's] property tax" revenue, id. at 572, 733 A.2d 1206, but rather partly from property taxes, which are determined on the basis of assessed value, and partly *966 from a user fee, which is designed to reduce the disparity in the contributions of different classes of taxpayers to the costs of the system. Such equalization of contributions to the costs of funding the sewer system among classes of taxpayers is not invidious or irrational because it maintains the availability of the service "to all persons in like circumstances upon the same terms and conditions." Id. at 563, 733 A.2d 1206 (quoting Boulevard Apts., supra, 110 N.J.Super. at 411, 265 A.2d 838).
Affirmed.
NOTES
[1] The ordinance also imposes user fees upon certain high volume commercial and industrial users of the sewer system. Those parts of the ordinance were not challenged in this litigation.
[2] This contribution is described as $230 in certain parts of the trial record. However, it appears from other parts of the record that the correct number is $240, or more precisely $241. In any event, the outcome of the appeal does not turn on the precise amount of this contribution. We have used the $240 figure for the purpose of our analysis.
[3] It is impossible to determine this figure with precision because the record does not disclose the number of two-family residences in New Providence or the portion of municipal real estate taxes allocable to sewer service paid by owners of those residences. However, the record does indicate that the owners of apartments and other residences containing three or more units pay a total $29,642 in real estate taxes allocable to sewer service and that there are a total of 731 such residential units. The record also indicates that the owners of single-family houses pay approximately $960,000 in real estate taxes allocable to sewer service ($240 per single-family residence times the approximately 4,000 single-family residences in New Providence). If the total of $989,642 currently allocable to sewer service from real estate taxes paid by owners of residences containing three or more units and single-family houses was replaced by a uniform sewer user fee, that fee would be approximately $209. Consequently, unless there are a substantial number of two-family residences in New Providence (and there is no indication there are), and the owners of those residences pay significantly less real estate taxes per unit than owners of single-family houses, a uniform fee to fund sewer service in New Providence, as permitted by N.J.S.A. 40A:26A-10, would be more than $200.
[4] We note that although N.J.S.A. 40:14A-8(b), which governs the establishment of rates by sewerage authorities, contains a basic standard that is similar to the standard set forth in N.J.S.A. 40A:26A-10, those standards differ slightly. N.J.S.A. 40:14A-8(b) provides that "rates ... shall as nearly as the sewerage authority shall deem practicable and equitable be uniform throughout the district for the same type, class and amount of use or service of the sewerage system." (Emphasis added). Unlike in N.J.S.A. 40A:26A-10, this basic standard is followed by a long list of criteria a sewerage authority may consider in determining the amount of usage of the sewer system. Moreover, unlike N.J.S.A. 40A:26A-10, N.J.S.A. 40:14A-8(b) does not authorize a sewerage authority to consider any other factor it "deem[s] proper and equitable" in establishing sewer rates. We have no need to determine whether a sewerage authority's delegated authority to establish sewer rates is more circumscribed than a governing body's authority under N.J.S.A. 40A:26A-10 involved in this appeal.