230 N.J. Super. 411 (1989)
553 A.2d 849
IN THE MATTER OF THE PETITION OF THE BERGEN COUNTY UTILITIES AUTHORITY AND THE HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION FOR THE INCLUSION OF A DECREASE IN RATES CHARGED FOR SOLID WASTE DISPOSAL AT THE KINGSLAND LANDFILL INTO THE HACKENSACK MEADOWLANDS DISTRICT AVERAGED RATES.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1988.
Decided February 1, 1989.
*413 Before Judges GAULKIN, R.S. COHEN and ARNOLD M. STEIN.
Howard T. Rosen argued the cause for appellants-intervenors City of Jersey City and the Jersey City Incinerator Authority (Clapp & Eisenberg, attorneys; Harvey C. Kaish on the brief).
Sheldon Cohen argued the cause for appellant-intervenor County of Passaic (DeCotiis & Pinto, attorneys; M. Robert DeCotiis of counsel, David J. McGee on the brief).
Robert F. Gallo argued the cause for respondent Bergen County Utilities Authority (Martin S. Cedzidlo on the brief).
Susan J. Vercheak, Deputy Attorney General, argued the cause for respondent Board of Public Utilities (Cary Edwards, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel).
William F. Rupp argued the cause for respondent-intervenor Solid Waste Action Coalition (Rupp & Ten Hoeve, attorneys).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
Bergen County Utilities Authority (BCUA) and Hackensack Meadowlands Development Commission (HMDC) petitioned the Board of Public Utilities (BPU) for approval of HMDC's district-wide *414 averaged rates for solid waste disposal.[1] Jersey City and its Incinerator Authority and the County of Passaic opposed the petition. Solid Waste Action Coalition, formed by municipal solid waste customers of BCUA, also intervened. The matter was heard by an Administrative Law Judge (ALJ) who issued an Initial Decision concluding that BCUA's budget should be reduced by some $5.3 million for the purpose of inclusion in the district-wide averaged rates. BPU rejected the Initial Decision and ruled that the budget proposed by BCUA should be included as submitted. Jersey City and Passaic County separately appealed. We consolidated the two appeals. We now reverse and remand for reconsideration by BPU, and order that Commissioner Robert Guido shall not participate.
The ALJ's Initial Decision was 40 pages long. It dealt comprehensively with the contentions of the petitioner BCUA and the various intervenors on the disputed budgetary items. It made thorough and detailed findings and explained the conclusions that (1) BCUA's 1987 budget should have included appropriations of retained earnings $3.15 million higher than the proposed $3.46 million; (2) the budgeted $693,000 for equipment replacement should be reduced by $365,000 to reflect non-purchase of a bulldozer, and by an additional $283,433, representing the difference between expensing and depreciating the purchase of additional new equipment; (3) the proposed $2.64 million for BCUA's resource recovery program was reasonable and includable to the extent of $1.14 million, but that the remaining proposed $1.5 million appropriation for a self-insurance reserve fund for environmental impairment liability arising from operation of the as-yet-not-built resource recovery *415 plant was premature and should not be included for rate averaging purposes.
BPU's opinion rejecting the ALJ's Initial Decision is three pages long. The first page contains a lengthy caption and one introductory paragraph. The second page has a brief procedural outline and a listing of the issues and the parties' positions on them, without explanations or evaluations. The text of the last page is reproduced in full:
After careful review and consideration of the post-hearing briefs, the Initial Decision and the exceptions to the Initial Decision, the Board finds the argument of the BCUA and the Solid Waste Action Coalition to be persuasive. Accordingly, the Board further finds that no adjustment should be made to the 1987 BCUA budget and that the inclusion of said budget, previously accorded interim approval, should be approved on a permanent basis.
With regard to the issue of capital outlays, the record adequately reflects the need for the subject equipment to enable the BCUA to operate and maintain the disposal facility in a reasonable manner and indicates that the expenditures for said equipment were appropriated by the BCUA in a manner consistent with applicable state requirements.
The Board is of the further opinion that the level of retained earnings appropriated by the BCUA is reasonable and that to increase said appropriation would be contrary not only to state policy but also to concepts of fiscal responsibility.
While agreeing with the inclusion by the ALJ of approximately $1.1 million in resource recovery expenses as consistent with Board policy, the Board would also include the $1.5 million related to a self-insurance fund as said fund is a component necessary for the operation of the facility and the level of expense is reasonable in light of the current insurance crisis that exists in New Jersey, especially with regard to environmental concerns. The Board is also of the opinion that the need to create such a fund is both present and vital. This is an item that cannot wait until the resource recovery facility begins its operations.
Therefore, based upon the entire record and the foregoing statements, the inclusion of the 1987 BCUA budget into the Hackensack Meadowlands District uniform system of rates, previously given interim approval by Order issued January 30, 1987, is HEREBY APPROVED on a permanent basis. The Initial Decision will be modified accordingly.
That is not enough. It is the well-known obligation of an adjudicating administrative agency to express the findings of fact and conclusions of law on which its decision rests. BPU's enabling act plainly states the duty. N.J.S.A. 52:14B-10(d). Application to BPU rate cases is not novel, Central R. Co. of N.J. v. Dept. of Public Utilities, 7 N.J. 247, 261 (1951), or *416 outdated, Matter of Robros Recycling Corp., 226 N.J. Super. 343, 351 (App.Div. 1988). "The requirement of findings ... is a matter of substance.... A conclusion requires evidence to support it and findings of appropriate definiteness to express it." N.J. Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 375-376 (1950).
BPU has a special responsibility in cases in which it rejects an ALJ's findings and conclusions. A reviewing court needs to know the basic facts upon which BPU acted, the principles it applied, the evidence it accepted or discarded. BPU can reject an ALJ's Initial Decision, but may not brush it aside. State, Dept. of Health v. Tegnazian, 194 N.J. Super. 435, 449-450 (App.Div. 1984). BPU need not discuss in detail every point of disagreement with the ALJ, but it must evaluate the crucial differences. Public Advocate Dept. v. Public Utilities Bd., 189 N.J. Super. 491, 505 (App.Div. 1983). Its decision must demonstrate that the agency gave attentive consideration to the ALJ's recommendation as part of the record and addressed items of evidence which were crucial to its decision. Id. at 506.
The ALJ's decision is only one part of the record before us to determine whether BPU's findings are supported by substantial credible evidence. Hiering v. Board of Trustees of Public Employees, 197 N.J. Super. 14, 19 (App.Div. 1984). BPU must provide some insight into its reasoning in order to enable us to make that determination. For example, the ALJ ruled that BCUA did not need to raise $1.5 million to start a self-insurance fund in 1987. She noted the lack of evidence that insurance coverage was unavailable, the unrealistically short time assumed by BCUA for the construction of the resource recovery plant, and the inequity of financing the fund through user fees to non-Bergen County ratepayers. In its opinion BPU said it disagreed, but the brief and uninformative announcement of its disagreement does not show whether it disagreed as to matters of fact, of law or of policy. Compare De Vitis v. *417 New Jersey Racing Com'n, 202 N.J. Super. 484, 493 (App.Div. 1985). BPU's brief and uninformative announcements are equally insufficient to decide the other substantial contested matters.
Ordinarily, we would remand to BPU for findings and conclusions based on the present record. That is the appropriate course where an agency rejects the recommendations of a hearing officer without issuing findings of fact and conclusions of law sufficient to permit judicial review of the soundness of its decision. St. Vincent's Hospital v. Finley, 154 N.J. Super. 24, 29-33 (App.Div. 1977); Rowley v. Board of Education of Manalapan-Englishtown, 205 N.J. Super. 65 (App.Div. 1985). The problem is that Robert Guido, one of the two BPU Commissioners who decided the case, should have recused himself.
Guido was never asked to recuse himself. It was no secret that he had been a BCUA Commissioner from 1970 to 1985, and Chairman from 1982 to 1985. In that year he was appointed to BPU. In 1987, when this petition was before BPU, Guido was Deputy Chairman of the Bergen County Republican party, and attended numerous local political functions. In addition, Guido's term as BPU Commissioner had ended in March. The Governor had nominated him for a new term, but the Senate did not confirm him until December, after BPU decided this case. It is impossible to say on this record whether reappointment was truly in doubt or only delayed. There is a suggestion that the matter was tabled in the Senate awaiting completion of a report on BPU by the Executive Commission on Ethical Standards. Meanwhile, the position of BCUA Executive Director had become vacant.
Jersey City's failure to move for recusal was explained to us as due to the undesirability to the City and its counsel of offending BPU and its commissioners and also as due to the fact that further significant information remained hidden until after the BPU decision.
*418 Just after the decision, a local newspaper published an article revealing Guido's possible appointment as BCUA Executive Director. It mentioned Guido's "stiff confirmation battle" for BPU reappointment upcoming in the Senate. It quoted Guido to the effect that he had heard rumors about the job offer but had not "seriously" discussed the prospect with anyone. The Bergen County Executive was quoted praising Guido but saying that the talk was premature.
By motion to supplement the record on appeal, Jersey City brought this matter to our attention. The record before us consists of documents and deposition transcripts developed after we granted the motion. If there were material factual issues raised by the documents and transcripts, we would have to find an appropriate means of resolving them. That is unnecessary, however, because we have concluded that the uncontested facts gatherable from the deposition transcripts compel the conclusion that Guido's participation invalidates BPU's decision.
These facts are: Guido's future in his $85,000 per-year BPU position was not perfectly secure. BCUA, which Guido served for 15 years as Commissioner and Chairman, was seeking to fill a vacancy in the office of Executive Director. During the fall, Guido was separately approached about taking the job by two men, neither of whom had the power of appointment. One was William McDowell, Bergen County Executive, who nominates BCUA Commissioners for confirmation by the Freeholders, a majority of whom were Republicans. The other was John Ingannamort, Republican County Chairman. The majority of BCUA Commissioners were Republicans. Guido says he did not seriously consider the job possibility, because he confidently expected reappointment to BPU. In default of that, he preferred to return to the private sector. On the other hand, the approaches were detailed enough to include discussion of an acceptable salary level at least as high as Guido's BPU salary.
*419 While the case was pending before BPU, a BCUA employee says he saw Guido in an evening meeting with two BCUA Commissioners in the BCUA offices. Guido himself was not asked if such an incident occurred and we make no finding whether it did or not. One of the Republican BCUA Commissioners testified that the Chairman told him in November 1987 that Guido would be Executive Director, that the political powers had approved, and that it was a "done deal." He protested the suitability of the Guido appointment. We make no finding whether that incident occurred.
To disqualify a member of an administrative agency from performing an adjudicative function, it is unnecessary to show actual bias. Members must be able to perform the duties of office free of any interest, personal or pecuniary, having the potentiality of influencing their judgment. Bd. of Ed. of W.O. v. Intern. Union Eng., 109 N.J. Super. 116, 120 (App.Div. 1970). The matter of conflict is fact-sensitive. The test is
whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty.
Van Itallie v. Franklin Lakes, 28 N.J. 258, 268 (1958). It is the potential for conflict that disqualifies. There need be no showing that the official succumbed to temptation or was even aware of it. Griggs v. Princeton Borough, 33 N.J. 207, 219 (1960).
Nothing before us indicates conscious impropriety on Guido's part. The circumstances, however, could reasonably be interpreted as having the likely capacity to tempt. If Guido had been employed by BCUA in 1987 he clearly would have been disqualified. See Griggs v. Princeton Borough, supra. So too if Guido had ongoing negotiations for employment with BCUA. See Pepsico, Inc. v. McMillen, 764 F.2d 458 (7th Cir.1985). The record before us does not demonstrate that degree of involvement. But here was a litigant with whom Guido had been associated for 15 recent years.[2] Two persons *420 with apparent influence over BCUA decisions offered Guido safe haven from his employment uncertainty, in a field he knew and for an ample salary. No matter how unlikely the need or how attractive the prospect of return to the field Guido left for BPU appointment two or three years before, the job opportunity with his former associates at BCUA could reasonably be interpreted as having the likely capacity to tempt Guido to avoid a decision contrary to BCUA's interests.
Two related matters. First, Guido has now been reconfirmed as BPU Commissioner. He still should not participate. We cannot ask Guido to do the impossible  to consider the matter anew as if he had never thought about it before.
Second, has Jersey City waived its objection to Guido's participation? We think not, in view of the substantial information unavailable before the newspaper revealed the job discussions.
Reversed and remanded to BPU for new proceedings. There need be no resubmission to the Office of Administrative Law unless BPU finds it necessary.
NOTES
[1] We previously approved the mechanism adopted by BPU for review of the averaged rates of HMDC (which itself may or may not be subject to BPU jurisdiction) which incorporate rates of both BPU-regulated entities and BCUA, which is not subject to BPU jurisdiction. IMO the Petition of HMDC, etc., A-1916-85T7, decided July 7, 1986.
[2] We do not decide if this alone would have been sufficient to disqualify.