622 A.2d 1314

IN THE MATTER OF THE PETITION OF MCI TELECOMMUNICA-
TIONS CORPORATION FOR AUTHORIZATION OF INTRA-
LATA COMPETITION AND APPROVAL OF CERTAIN TAR-
IFFS.

Superior Court of New Jersey
Appellate Division

Argued November 17, 1992—Decided February 1, 1993.
Reconsidered March 10, 1993—Decided March 18, 1993.

Before Judges ANTELL, DREIER and VILLANUEVA.

*James S. Laskey* argued the cause for appellant MCI (*Norris, McLaughlin & Marcus,* attorneys; *Mr. Laskey,* on the briefs).

*Helene S. Wallenstein,* Deputy Attorney General, argued the cause for respondent New Jersey Board of Regulatory Commissioners (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Wallenstein,* on the brief).

*Philip S. Schaefer* argued the cause for intervenor-respondent New Jersey Bell Telephone Company (*Schaefer and Mulvee,* attorneys; *Bernard M. Hartnett, Jr.,* of counsel; *Mr. Schaefer* and *Robert D. Mulvee,* on the brief).

*Riker, Danzig, Scherer, Hyland & Perretti,* submitted a brief on behalf of respondent-intervenor AT&T Communications of New Jersey (*Jeanne M. Bratsafolis,* on the brief).

*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* submitted a brief on behalf of respondent-intervenor

U.S. Sprint Communications Company, Ltd. (*Kenneth F. Oettle* and *James M. Hirschhorn,* on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

On May 1, 1990, MCI Telecommunications Corporation (hereinafter "MCI") petitioned the Board of Regulatory Commissioners, then known as the Board of Public Utilities (hereinafter "Board"), to authorize intraLATA competition[1] in New Jersey, and in connection therewith to approve the addition of certain services to MCI's intrastate tariff. In the alternative, MCI requested Board authorization to provide the services in question on an intrastate basis, both interLATA and intraLATA, without being required to pay any compensation to New Jersey Bell Telephone Company (hereinafter "N.J. Bell") above and beyond the access charges that MCI pays to N.J. Bell for origination and termination of all such traffic. AT & T Communications of New Jersey, Inc. (hereinafter "AT & T") and U.S. Sprint Communications Company, Ltd. Partnership (hereinafter "Sprint"), both petitioned for leave to intervene in support of MCI's petition to allow intraLATA competition.

MCI's petition to authorize intraLATA competition was denied on May 16, 1990, without any discovery by MCI and without any form of hearing. The Board's action was formalized by an order dated May 22, 1990. However, the Board granted a hearing as to MCI's compensation request, and that application was resolved by order dated May 13, 1991, by which the Board fixed the level of compensation to be paid by MCI to N.J. Bell at 8.22 cents per minute with no offset for access charges.

MCI now appeals from the order of May 22, 1990, and the order of May 13, 1991. The primary issue which we consider is whether the Board abused its discretion in denying MCI's

---

[1] The terms intraLATA and interLATA will be explained shortly hereinafter.

petition to allow intraLATA competition without a hearing. MCI also challenges the Board's action in fixing the level of compensation MCI must pay to N.J. Bell. Our presentation of the regulatory background and the facts of this proceeding follows.

Pursuant to the antitrust divestiture decree entered in *United States v. American Tel. and Tel. Co.*, 552 *F.Supp.* 131 (D.D.C.1982), *aff'd sub nom., Maryland v. United States*, 460 *U.S.* 1001, 103 *S.Ct.* 1240, 75 *L.Ed.*2d 472 (1983), the old AT & T telephone system was dismantled and then restructured effective January 1, 1984. Under the decree, the entire country was divided into a series of geographic regions known as Local Access and Transport Areas, or LATAs. New Jersey is divided into three LATAs, one consisting of the 201 and 908 area codes, and two consisting of the eastern and western halves of the 609 area code. The decree allows local exchange carriers of the Bell Operating Companies, including N.J. Bell, to carry telephone calls which both originate and terminate in a single LATA ("intraLATA calls"), but not calls which originate and terminate in different LATAs ("interLATA calls"). The decree provides that interLATA calls are to be handled by long distance or interexchange carriers such as AT & T, Sprint and MCI. These interexchange carriers are subject to the jurisdiction of the Board for intrastate services which they provide. *See N.J.S.A.* 48:2–13; *United States v. American Tel. and Tel. Co.*, 552 *F.Supp.* at 196, n. 271.

Pursuant to the decree, N.J. Bell is prohibited from completing a call between Newark and Trenton, for example, even though both of these cities are in its service territory. The reason for this is that because the call has its origin and termination points in different LATAs, it may only be handled by the interexchange carriers. Although each local exchange carrier has a monopoly to provide local service within each LATA, if a call is to be made between LATAs (interLATA), the local exchange carrier passes the call off to the customer's primary or presubscribed interexchange carrier, which then

delivers the call to the LATA where the call is to terminate. The customer is charged for the call by the interexchange carrier which must then pay access charges to the local exchange carrier for the use of its facilities in completing the call.

Generally speaking, interexchange carriers do not connect directly to the premises of telephone subscribers. Instead, these carriers rely on local access connections provided by local exchange carriers such as N.J. Bell. Local access is essentially a monopoly service provided by local exchange carriers.

The divestiture decree authorized individual state regulatory commissions to regulate the local exchange carriers, as well as the long distance carriers doing business intrastate. The decree also provided that the state regulatory commissions have individual discretion as to whether or not the long distance carriers should be permitted to compete with the local exchange carriers for the provision of intrastate intraLATA service. *See id.* at 159, n. 117.

From the record, it appears that interexchange carriers have the necessary technology to carry not only interLATA calls but intraLATA calls as well in competition with the local telephone companies. According to MCI, forty-five states have either authorized intraLATA competition or are in the process of deciding whether or not to do so. After a hearing in 1984 in a generic type proceeding, the Board decided that it would allow only local exchange carriers, such as N.J. Bell, to handle intraLATA calls, and that long distance carriers could not compete with local exchange carriers for that traffic. The Board's decision focused on its concern at the time about "the possible erosion of N.J. Bell revenues." It appears, however, that this anxiety was largely speculative. At page two of its Decision and Order of June 11, 1984, it stated the following:

the Board believes that there is insufficient data at present to make a determination regarding the effect of intraLATA competition on the local exchange companies and universal service. The Board is committed to universal service and reasonable basic exchange rates. Until we are convinced that neither of these concepts will suffer, the Board will not allow intraLATA competition.

MCI's May 1990 petition pointed out that the telecommunications industry had undergone vast changes during the six-year period since the Board established its policy of prohibiting intraLATA competition, and asserted it was time for the Board to reexamine that policy. It correctly noted that the Board's 1984 concern, that intraLATA competition would result in increased local exchange rates and lower telephone subscribership, was based on "little hard evidence one way or the other." It also asserted that at the time of filing the petition "not only is there actual data to review, but it is also clear that the Board is no longer in the main stream of regulatory policy."

In further support of its application, MCI alleged the following: (1) states which had authorized intraLATA competition had seen their local rates go down, not up; (2) states which had authorized intraLATA competition were moving closer to universal service, *i.e.*, the percentage of households having telephone service was higher in states where intraLATA competition was permitted; (3) local exchange carriers operating in jurisdictions permitting intraLATA competition had not suffered erosion of their business derived from interexchange calls but, in fact, had experienced greater rates of growth in long distance revenue than had N.J. Bell.

In deciding to dismiss MCI's petition fifteen days after it had been filed, without the benefit of discovery, testimony, hearings or oral argument, the Board made the following responses: (1) it had recently ordered "a comprehensive evaluation of the State's telecommunications infrastructure which, in part, is intended to address the interaction of local exchange companies with interexchange carriers;" (2) there was a study pending by the National Telecommunications and Information Administration "which is intended to address the entire interexchange carrier interaction;" (3) the Telecommunications Act of 1990, then said by the Board to have been pending in Congress, might give the Board "authority to determine whether local exchange companies should be permitted to complete interLATA intrastate calls;" (4) the issue of intraLATA competition was tied to

N.J. Bell's Rate Stability Plan, pursuant to which N.J. Bell's rates were frozen in 1987 and were expected to remain so until 1993; and (5) the Board was monitoring the issue internally.

The Board reached its result based entirely upon what it conceived to be past policy determinations, noting that its "current policy has not been hastily conceived but rather represents thoughtful and deliberate review and analysis by this Board throughout the years following the divestiture of AT & T." Referring to its decision of January 24, 1990, in *In the Matter of the Filing by U.S. Sprint Communications Company, Ltd. Partnership*, Docket No. TT89100852, it stated that it had there reviewed its "policy determinations with respect to the ban on intraLATA competition and reaffirmed said ban," and observed that it saw "no reason to revisit such issues at this time." The *Sprint* decision of January 24, 1990, arose from an application by Sprint for the approval of certain intrastate interLATA phone services in accordance with an agreement it had entered into with N.J. Bell. By its decision, the Board approved those services in accordance with the agreement. We have carefully read that five-page decision, and find therein not even a passing reference to the question of intraLATA competition, let alone a review of the Board's policy determinations with respect to, and a reaffirmation of, its ban on intraLATA competition.[2]

Nor, indeed, have we been shown any evidence that, as the Board says, its current policy "represents thoughtful and deliberate review and analysis by this Board throughout the years following the divestiture of AT & T." The only basis we discern in the record for the Board's policy is its conjectural determination in 1984 that intraLATA competition equated with

---

[2] Nevertheless, the Board suggested in its decision and order of May 22, 1990, that "in light of our recent affirmation of that policy in *Sprint* " MCI's petition was merely a dilatory tactic to evade compliance with the Board's enforcement letter of April 20, 1990, which called upon MCI to revise its tariff to include all intrastate services.

"the possible erosion of N.J. Bell revenues." As the Board itself acknowledged in its 1984 decision, there was "insufficient data at present to make a determination regarding the effect of intraLATA competition on the local exchange companies and universal service."

The Board's other reasons for its dismissal of MCI's petition without a hearing are equally vulnerable. As to its reliance upon a "comprehensive evaluation of the State's telecommunications infrastructure," MCI points out that the study was privately conducted and funded by N.J. Bell, and plausibly argues that this is not "equivalent to the fair and open investigation that MCI was seeking." Furthermore, MCI asserts, without response from the Board, that the consultant engaged to carry out the study was not even asked to investigate the issues relating to intraLATA competition. Although the Board refers to N.J. Bell's Rate Stability Plan as a reason for denying MCI's petition, no explanation is offered as to the relationship between the Rate Stability Plan and intraLATA competition.

Addressing the Board's reliance upon "the pending Telecommunications Act of 1990," MCI flatly states in its main brief on appeal, and repeats in its reply brief and in oral argument, that no such legislation ever existed or was in the process of enactment. No further light was ever shed on this issue by the Board either in its answering brief or in oral argument.

*N.J.S.A.* 48:2–46 provides:

The Superior Court, appellate division is hereby given jurisdiction to review any order of the board and to set aside such order in whole or in part when it clearly appears that there was no evidence before the board to support the same reasonably or that the same was without the jurisdiction of the board.

No order shall be set aside in whole or in part for any irregularity or informality in the proceedings of the board unless the irregularity or informality tends to defeat or impair the substantial right or the interest of the appellant.

"It is firmly settled that arbitrary and capricious action by an administrative or executive agency should be overturned." *Worthington v. Fauver*, 88 *N.J.* 183, 204, 440 *A.*2d 1128 (1982).

*See Drake v. Human Services Dept.,* 186 *N.J.Super.* 532, 536, 453 *A.*2d 254 (App.Div.1982).

Here, MCI's petition was dismissed three weeks after it had been filed before the taking of any discovery, without the presentation of any evidence, without a hearing and even without oral argument. Although the petition acknowledged that the Board had made a policy determination in 1984 which on its face was an obstacle to the relief sought, MCI asserted that the 1984 determination rested upon premises which had been disproved by subsequent experience in the telecommunications industry. Whereas the 1984 decision and order anticipated that intraLATA competition would result in increased local rates which would discourage universal service, MCI suggested that experience elsewhere had shown that intraLATA competition had been accompanied by a drop in local rates and an increase in the percentage of households having telephone service. Further, contrary to the expectation of the 1984 decision and order, MCI asserted that local carriers operating in jurisdictions permitting intraLATA competition have not suffered erosion of their business derived from long distance calls, but in fact had experienced greater rates of growth in such revenues than had N.J. Bell. Although the Board's decision and order of May 22, 1990, contains extensive discussion, it amounts to nothing more than a reaffirmation of the "brief and uninformative announcement," *Matter of Bergen County Util. Auth.,* 230 *N.J.Super.* 411, 416, 553 *A.*2d 849 (App.Div.1989), which is the essence of its decision and order of June 11, 1984.

MCI's petition clearly demanded a hearing. As we have said, the Board itself recognized in 1984 the fragile basis on which its judgment rested, that it was acting on "insufficient data," and that its policy determination was intended to be provisional only "[u]ntil we are convinced that neither of these concepts [ (universal service and reasonable basic exchange rates) ] will suffer." MCI's petition proposed to meet this condition that the Board specified in 1984. Indeed, it alleged that it would actually advance the goal of universal service and that basic

exchange rates would diminish. As the Board should have known, these goals clearly served the public interest, and in our view it had a duty to listen. Although the Board discussed several topics and gave "reasons," it did not address the issues raised by MCI in its petition or even demonstrate how its expertise might have been a factor in its decision. We see no evidence therein of reasoned decision-making. *See Noble Oil Co. v. DEP.*, 123 *N.J.* 474, 476–77, 588 *A.*2d 822 (1991); *In re Plainfield–Union Water Co.*, 11 *N.J.* 382, 395–396, 94 *A.*2d 673 (1953). It must therefore be adjudged arbitrary, capricious and unreasonable.

The other part of this appeal grows out of the fact that for a number of advanced services, such as 800 and certain WATS services, screening of calls by the local exchange carrier is not possible at the present time. All of these calls, whether they be interLATA or intraLATA, are handed off to the interexchange carrier, which then completes and bills for the call. For this reason, the Board formulated a "block or compensate" requirement on interexchange carriers which obliged those carriers to compensate N.J. Bell for such intraLATA traffic carried by long distance carriers on N.J. Bell's facilities. In December 1989, the Board approved a settlement agreement which was to apply to N.J. Bell, AT & T and Sprint. The agreement established a new compensation rate for a number of advanced services of 8.22 cents per minute and only a partial access charge.[3] However, in its order entered herein, the Board ordered payment by MCI of 8.22 cents per minute of use "with no offset for access charges or any other reduction."

The purpose of compensation is to protect N.J. Bell from erosion of its revenues resulting from the advanced service intraLATA traffic being handled by the interexchange carriers.

---

[3] The settlement agreement provided for decreasing levels of access charges for the years 1990 through 1992. For the years commencing January 1, 1993, no access charges were to be paid.

However, N.J. Bell's total revenue to be received under the Board's order when MCI carries a minute of intraLATA traffic is 10.501 cents (8.22 cents for compensation plus the access charge of 2.281 cents), and its total profit is 10.051 cents (8.22 cents compensation plus the 1.831 cents profit that N.J. Bell earns on its access service). Both of these figures exceed what N.J. Bell realizes when it carries a minute of intraLATA traffic itself. MCI argues that the Board's "make whole" approach for the benefit of N.J. Bell should result only in a total award of 7.275 cents. Although the Board's decision to require compensation in the amount of 8.22 cents is supported by the evidence, no explanation is given for disallowing an offset for access charges.

We note again that the Board approved the industry settlement of December 1989 whereby MCI's competitors, AT & T and Sprint, were required to pay only partial access charges. The only explanation ventured by the Board for this disparity of treatment is that MCI has chosen to litigate the issue of compensation, whereas the other two interexchange characters agreed to settle with N.J. Bell. Reliance for this judgment was placed by the Board on *Dept. of Pub. Advocate v. N.J. Bd.. of Pub. Util.*, 206 *N.J.Super.* 523, 503 *A.*2d 331 (App.Div.1985). That case involved two different utilities, one of which chose to settle an issue as part of a total settlement package, while the second utility chose to litigate the same issue. After the litigating utility was successful in its litigation, the other utility demanded similar treatment. There, the Board's action in denying similar treatment was affirmed by this court under the circumstances presented.

Obviously, the circumstances here are different from those of *Dept. of Pub. Advocate.* Here, the litigating utility seeks treatment equivalent to that received by MCI's competitors from the Board through its approval of their settlement with N.J. Bell. It is not a case where, as in *Dept. of Pub. Advocate, supra,* a utility is seeking to be relieved of obligations which it voluntarily accepted by settlement. While it is true that a

litigant cannot ordinarily complain of an award that turns out to be less than a previously rejected settlement offer, a proceeding before the Board of Regulatory Commissioners, which is charged with the responsibility of fixing "just and reasonable ... rates," *N.J.S.A.* 48:2–21(b)(1), and insuring that public utilities "furnish safe, adequate and proper service," *N.J.S.A.* 48:2–23, differs from conventional litigation.

The order for compensation of 8.22 cents plus access charges of 2.281 cents substantially exceeds what would be required under the Board's "make whole" philosophy. We conclude that this departure from its own standards was arbitrary and capricious. The offset for access charges should have been allowed in the interest of achieving the Board's stated "make whole" purpose without placing MCI at a competitive disadvantage vis-a-vis the other interexchange carriers.

The Board's decision and order of May 22, 1990, is reversed, and the matter is remanded to the Board for a hearing on the issues raised by MCI's petition to allow intraLATA competition. We leave to the sound discretion of the Board the determination as to the nature of the hearing to be held. The Board's order of May 13, 1991, is modified to provide that MCI pay compensation to the local exchange carriers at a rate of 8.22 cents per minute of use with offset for access charges corresponding to the charges paid by AT & T and Sprint pursuant to the industry settlement of December 1989. It is noted that in the event MCI's petition for intraLATA competition is granted, then the question of paying compensation to local exchange carriers by interexchange characters may be rendered moot.