MENYUK, J.T.C.
This action is an appeal of personal property tax for tax year 2009 and it comes before the court on the motion of defendant Hopewell Borough (“Borough”) for partial summary judgment, and on the cross-motion of plaintiff Verizon New Jersey, Inc. (“Verizon”) for summary judgment or partial summary judgment. In earlier motions, the court granted leave to the State of New Jersey to intervene in this action pursuant to R. 4:28-4, and to the New Jersey State League of Municipalities (“League”) to appear as amicus curiae pursuant to R. 1: 13-9(a).
At issue is the interpretation and constitutionality of language contained in N.J.S.A. 54:4-1, which imposes an annual local property tax on most real property and certain limited categories of personal property. It provides, in pertinent part:
Personal property taxable under this chapter shall include ... the tangible goods and chattels, exclusive of inventories, used in business of local exchange telephone, telegraph and messenger systems, companies, corporations or associations that were subject to tax as of April 1,1997 under P.L.1940, c. 4 (C.54:30A-16 et seq.) as amended____As used in this section, “local exchange telephone company” means a telecommunications earner providing dial tone and access to 51% of a local telephone exchange.
[N.J.S.A. 54:4-1.]
The current language of this section of the statute was enacted as part of L. 1997, c. 162, which revised the taxation of certain telecommunications companies and gas and electric public utilities in connection with the deregulation of those industries.
I. Procedural History
It is undisputed that Verizon is a local exchange telephone company that was subject to Chapter 4 of the Franchise and Gross Receipts Tax, N.J.S.A. 54:30A-16 to -29 (“FGRT”) as of April 1, 1997. By letter dated August 22, 2008, Verizon informed the Borough’s mayor and tax assessor that it no longer provided dial tone and access to at least 51% of the telephone exchange(s) in the Borough, and therefore was no longer required to file Form PT-10, which is a tax return for the reporting of tangible personal property used in business by a local exchange telephone company. The letter further advised that Verizon would not file the next *405 annual Form PT-10, due September 1, 2008.[1] The return due on September 1 is used by the assessor to set the assessment for the next tax year, which in this case was tax year 2009. N.J.S.A. 54:4-2.48.
Verizon did not file a return, and the Borough’s assessor used the information provided on the return filed for tax year 2008 to make an assessment in the amount of $1,897,655 for tax year 2009. Verizon appealed the assessment to the Mercer County Board of Taxation, which affirmed the assessment without prejudice. This appeal followed. The Borough filed a counterclaim seeking, among other things, a declaratory judgment as to the interpretation and application of N.J.S.A. 54:4-1.
The personal property that is the subject of the assessment in this case is generally present in all municipalities throughout New Jersey and consists of the various types of property used to provide telephone service, such as poles, aerial cable, underground cable, buried cable, intrabuilding cable and conduit systems. Additionally, Verizon owns land and a building in the Borough that is used as a switching station for telecommunications. The building houses fiber optic cables and electronic equipment able to direct and switch telephone traffic. The cables and equipment located in the building are also the subject of the personal property tax assessment at issue here. In addition to Verizon’s equipment, the switching station houses equipment that is the business personal property of one of Verizon’s competitors. Verizon is required by federal law to house that equipment at its facilities, an arrangement referred to by the parties as “collocation.” 47 U.S.C. §§ 251, 259; 47 C.F.R. § 59.1. The personal property of the competitor, whose equipment is located at the same facility, in not subject to the tax imposed by N.J.S.A. 54:4-1, because it is not a telephone company that was subject to FGRT as of April 1,1997.
Verizon’s complaint initially alleged that the assessment was improper because Verizon provided dial tone and access to less *406 than 51% of the local telephone exchange in Hopewell, and it was therefore no longer a local exchange telephone company subject to the tax. The Borough moved for summary judgment on the ground that the “51% test” is not an annual test. The Borough maintains that the Legislature intended the 51% test be applied just once—on April 1,1997. Because it is undisputed that Verizon provided dial tone and access to 51% or more of the local exchange as of that date, the Borough contends that Verizon is obliged to file returns and pay the business personal property tax annually thereafter until such time as the Legislature amends the statute. Amicus League supports this position.
Verizon thereafter filed an amended complaint additionally alleging that, even if construed to mean that Verizon would not be subject to the tax if it provided dial tone and access to less than 51% of a local exchange, N.J.S.A. 54:4-1, as applied to it, nevertheless: (1) violated the Equal Protection Clause, U.S. Const. amend. XIV, § 1, and similar guarantees of equal protection under N.J. Const. art. I, § 1; (2) was a special law violating N.J. Const. art. IV, § 7, 119; and (3) violated the Uniformity Clause, N.J. Const, art. VIII, § 1, 111(a). Verizon cross-moved for summary judgment on the issue of the appropriate statutory interpretation and also on the constitutional issues raised in its amended complaint.
For purposes of the motion, it was assumed that Verizon no longer met the 51% test. As acknowledged by Verizon, if the court agrees with Verizon’s construction of the statute but rejects its constitutional arguments, Verizon would still be required to establish that it did not provide dial tone and access to 51% of the local exchange as of the assessment date for tax year 2009. The State takes no position with respect to the construction of the statute, but maintains that if the court construes the statute in the way that Verizon urges it should, then the court should defer deciding the constitutional issues until after Verizon has proved that it did not meet the 51% test for tax year 2009. The State contends that all other affected taxpayers and municipalities must have the opportunity to be heard on the constitutional issues. It further asserts that if Verizon establishes as a factual matter that *407 it was not subject to the tax, then Verizon lacks standing to challenge the tax on constitutional grounds. Verizon responds that N.J.S.A. 54:4-1 is unconstitutional under any interpretation, even the interpretation that it advocates, and that the court must therefore decide the constitutional issues raised by the amended complaint.
For the following reasons, the court concludes that N.J.S.A. 54:4-1 subjects a local telephone exchange company to tax on its business personal property located in a municipality when it provides dial tone and access to 51% of a local exchange, with the 51% test to be performed annually as of the assessment date. The court also determines that, notwithstanding the State’s arguments, it must dispose of Verizon’s constitutional challenges to the statute. When construed as subjecting Verizon to tax on its business personal property when it provides dial tone and access to 51% of a local exchange as of the annual assessment date, N.J.S.A. 54:4-1 comports with federal and state guarantees of equal protection, does not constitute special legislation and does not violate the Uniformity Clause.
II. Regulatory Background
In order to decide the issues raised here, it is necessary to understand the history of the relevant portion of N.J.S.A. 54:4-1 in the context of the deregulation of public utilities that commenced with the breakup of American Telephone and Telegraph Company (“AT & T”) in 1984. In general terms, telephone service in the United States was operated as a monopoly by AT & T prior to the settlement of anti-trust litigation brought by the federal government. See generally, United States v. Am. Tel. & Tel. Co., 552 F.Supp. 131 (D.D.C.1982), aff'd sub nom., Maryland v. United States, 460 US. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Local telephone service was provided by several local operating companies, popularly known as Baby Bells, most of which were wholly owned by AT & T. Id. at 139. Under the divestiture decree entered in the anti-trust litigation, effective January 1, 1984, the AT & T monopoly was dismantled, and AT & T divested itself of the Baby Bells, which included New Jersey Bell Telephone Com *408 pany (“NJ Bell”), the operating company that provided local telephone exchange service for virtually all of New Jersey. In re MCI Telecomm. Carp., 263 N.J.Super. 313, 316, 622 A.2d 1314 (App.Div.1992). Verizon, the plaintiff here, is the corporate successor to NJ Bell.
Following divestiture, the Baby Bells, including NJ Bell, had a monopoly over the provision of local telephone service and telephone connections within specified geographic regions (called local access and transport areas, or LATAs). Ibid. However, the local telephone companies were severely limited by the terms of the divestiture decree from providing other telecommunication services, including connections between LATAs, even where, as in New Jersey, more than one LATA was located within the service area of the Baby Bell. United States v. AT & T, supra, 552 F.Supp. at 186; MCI Telecomm., supra, 263 N.J.Super. at 316, 622 A.2d 1314. Competitive long distance telephone service between LATAs was offered by carriers such as the post-divestiture AT & T, MCI and Sprint. Ibid.
The divestiture decree authorized the individual state regulatory commissions to regulate the local telephone companies and the intrastate business of long distance carriers. Id. at 317, 622 A.2d 1314. The state regulatory commissions were further authorized to determine whether or not the long distance companies would be permitted to compete with the local telephone companies for the provision of intrastate intra-LATA service. In New Jersey, long distance earners were not initially permitted to provide intra-LATA service in competition with NJ Bell. Id. at 315, 622 A.2d 1314.
With the enactment of the Telecommunications Act of 1992, L. 1991, c. 428, the New Jersey Legislature determined that long distance service in New Jersey was sufficiently competitive to relieve such carriers from traditional utility regulation. N.J.S.A. 48:2-21.16(b)(2). The legislation also authorized local telephone companies to offer some competitive telecommunication services. N.J.S.A. 48:2-21.19; see, In re Application of N.J. Bell Tel. Co., 291 N.J.Super. 77, 82-86, 676 A.2d 1133 (App.Div.1996)(diseussing *409 the scope of the legislation); see also Board of Public Utilities, “Notice of Pre-Proposal and Notice of Investigation, Local Exchange Competition for Telecommunications Services,” 28 N.J.R. 247(b) (Jan. 16, 1996)(initiating an investigation and rulemaking proceeding -with respect to the provision of local exchange services).
A few years after the New Jersey legislation was enacted, Congress passed the Federal Telecommunications Act of 1996, Pub.L. No. 104-104, 110 Stat. 56, which authorized the Baby Bells to compete in the inter-LATA long distance market, provided that they had taken sufficient steps to facilitate competition in the intra-LATA telephone market. 47 U.S.C. § 271. See generally, Anne S. Babineau, Hesser G. McBride, Jr. and Adrian D. Hronich, Full Competition Comes to the Telecommunications Market in New Jersey, New Jersey Lawyer, June 1999 at 29-33.
According to information published by the Federal Communications Commission (“FCC”) on its website and included in Verizon’s motion papers, new entrants to the local telephone market provided about 1.2% of total local services nationwide as of 1997. FCC data further indicates that, by the end of June 2008, there was considerable competition in the New Jersey local telephone market from new entrants and from companies offering local telephone service by way of cable modem. As of June 30, 2008, the Borough was served by sixteen local exchange carriers in addition to Verizon. However, the FCC data indicates that those companies that had provided local telephone exchange service at the time of enactment of the Federal Communication Act of 1996 (that is, Verizon’s predecessor and two other companies with limited service areas in New Jersey, together known as “incumbent local exchange carriers” or “ILECs”[2]) continued to provide the majority of local telephone service in New Jersey. Verizon’s property tax manager notes in his certification submitted in support of Verizon’s motion that, based on FCC data, Verizon and the other ILECs provided 62% of total end-user connections for land line (as *410 distinguished from wireless) local telephone services in New Jersey as of June 2008.
Because the amendment to N.J.S.A. 54:4-1 at issue here was part of legislation that revised the taxation of gas and electric utilities as well as telecommunications companies, L. 1997, c. 162, it is worth noting that the deregulation of gas and electric utilities took place over a similar time period as set forth above with respect to the telecommunications industry. See generally, In re Pub. Serv. Elec. and Gas Co. Rate Unbundling, 330 N.J.Super. 65, 82-91, 748 A.2d 1161 (App.Div.2000), aff'd 167 N.J. 377, 771 A.2d 1163 (2001), cert. den., sub nom. Co-Steel Raritan v. N.J. Bd. of Pub. Utils., 534 U.S. 813, 122 S.Ct. 37, 151 L.Ed.2d 11 (2001) (setting forth the history of deregulation of electric utilities in New Jersey).
III. Taxation of Business Personal Property
Prior to and continuing through the period that the telecommunications industry was undergoing deregulation, the design of the New Jersey personal property taxation statutes was also undergoing considerable change. As recounted in New Jersey Bell Telephone Co. v. Laurel Springs Bor., 1 N.J.Tax 619, 624-25 (Tax 1980), before enactment of L. 1960, c. 51 (“Chapter 51”), all tangible personal property was subject to local taxation. However, “[ejrratic and uneven assessment of this important class of property [was] more the rale than the exception.” Commission on State Tax Policy, Ninth Report 109 (1958). Chapter 51 was intended to be “an extensive revision [of the local property tax laws] affecting both real and personal property.” N.J. Bell Tel., supra, 1 N.J.Tax at 625. Among other things, Chapter 51 retained a tax on tangible personal property used in business. L. 1960, c. 51, §§ 7 and 8; N.J.Bell Tel., supra, 1 N.J.Tax at 626.
There was, however, a concern that implementation of Chapter 51 would result in substantial shifts of the tax burden. Consequently, the Legislature deferred the effective date of the legislation three times while additional studies were conducted. Id. at 625. Interim legislation, L. 1964, c. 140 and c. 141, was subse *411 quently enacted to help lessen the anticipated impact of Chapter 51 on municipalities and their taxpayers. N.J. Bell Tel., supra, 1 N.J.Tax at 626. At the time that he signed Chapter 141 into law, Governor Hughes announced his intention to form the Governor’s Committee on Local Property Taxation (“Committee”), to be responsible for surveying the impact of Chapter 51 and suggesting modifications to it. Id. at 626-27.
The Committee concluded that local taxation of personal property should be eliminated and replaced with other tax sources. Committee, Report 38 (Dec. 15,1965). The Committee recognized that a simple increase in the corporate income and franchise tax rate under the Corporation Business Tax Act, N.J.S.A. 54H0A-1 to -28 (“CBT”), would be an insufficient revenue replacement for the business personal property tax because: (1) the local property tax on the personal property of telephone and telegraph companies at that time amounted to almost twenty percent of the personal property tax revenues, id. at 44; and (2) those companies were not subject to the CBT, but were instead subject to the FGRT. Id. at 24-25.
Ultimately, the Committee recommended that the revenue from local personal property taxes be replaced by, among other things, an increase in the CBT rate and a State-wide rather than a local tax on business personal property. Id. at 44. At the suggestion of the telephone and telegraph companies, it was recommended that the personal property of those companies continue to be a local tax “because of the special nature of these companies.”[3] Ibid.
The recommendations of the Committee were, by and large, accepted by the Legislature, N.J. Bell Tel., 1 N.J.Tax at 627, which enacted L. 1966, c. 136 and c. 138. Chapter 136 added a business personal property tax to be assessed and paid to the State,[4] but excluded from its ambit “goods and chattels used or *412 held for use in business by any ... corporation subject to tax under chapter 4 of the laws of 1940.” L. 1966, c. 136, § 2(b)(5). At that point in time, only telephone and telegraph companies were subject to the tax imposed by L. 1940, c. 4, otherwise known as the FGRT.[5] Chapter 138, L. 1966, c. 138, § 1, amended N.J.S.A. 54:4-1 to provide that personal property taxable locally included only the personal property “exclusive of inventories, used in business of telephone, telegraph and messenger systems, companies, corporations or associations subject to tax under chapter 4, laws of 1940, as amended.”
The changes to the telecommunications industry following divestiture were first reflected in the New Jersey tax statutes by the enactment of L. 1989, c. 2, which amended N.J.S.A 54:4-1 to exclude “certain interexehange and interstate telecommunications companies” (primarily AT & T) from the local personal property tax imposed by that section. Senate Revenue, Finance and Appropriations Committee, Statement to Assembly, No. 135 (Oct. 20, 1988). See also N.Y. SMSA Ltd. P’ship v. E. Hanover Twp., 13 N. J.Tax 564, 568 (Tax 1994) (effect of amendment was to shift the local personal property tax from AT & T to NJ Bell); “Assembly OKs bills to cut AT & T taxes, raise funds for 911,” Trenton Times, June 24, 1988, at A4; “Unwrapping Package of New N.J. Phone Tax,” Philadelphia Inquirer, Apr. 2, 1989, at Bl.
Following amendment by L. 1989, c. 2, the relevant portion of N.J.S. A. 54:4-1 continued the tax on the personal property of local exchange telephone companies, which were defined as “a telecommunications carrier providing dial tone and access to substantially all of a local telephone exchange.” L. 1989, c. 2, § 3 also excluded telecommunications carriers other than local exchange telephone *413 companies, such as AT & T, from taxation under the FGRT. Consequently, long distance telephone carriers became taxable as ordinary corporations under the CBT Act rather than as public utilities. See N.J.S.A. 54:10A-3(a)(excluding from the CBT those corporations subject to a tax assessed on the basis of gross receipts).
The last amendment to N.J.S.A. 54:4-1 that is pertinent here was made by L. 1997, c. 162, which generally revised the taxation of gas and electric utilities as well as of local telephone companies. The legislation was entitled: “An act revising the taxation of gas and electric public utilities and certain telecommunication companies, and sales of electricity, natural gas and energy transportation service, in order to preserve certain revenues under transitions to more competitive markets in energy and telecommunications, revising and repealing various sections of statutory law.” Following amendment by L. 1997, c. 162, § 60 (“Section 60”), the relevant portion of N.J.S.A. 54:4-1 continued to tax only those local exchange telephone companies subject to the FGRT as of April 1, 1997, and redefined local exchange telephone company as “a telecommunications carrier providing dial tone and access to 51% of a local telephone exchange.”
Based on publicly available information published by the New Jersey Division of Taxation on its website,[6] which neither Verizon nor the Borough disputes, only Verizon and the two other ILECs, United Telephone Company of New Jersey and Warwick Valley Telephone Company, were subject to the FGRT as of April 1, 1997.
There are no issues of material fact in dispute in this matter. The Borough’s motion and Verizon’s cross-motion are made pursu *414 ant to R. 4:46, which provides that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’” Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 529, 666 A.2d 146 (1995). If an opposing party offers no affidavits or matter in opposition, that party cannot be heard to complain if the court grants summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). Consequently, disposition of this matter by way of summary judgment is not only appropriate, but required by R. 4:46-2(e) and the relevant case law.
IV. Construction of the Statute
The court first takes up the dispute as to how the statute is to be construed. The following principles are applicable to the court’s consideration of that question. As with any statute, the primary goal of the court is to carry out the intent of the Legislature. Cosmair, Inc. v. Director, Div. of Taxation, 109 N.J. 562, 570, 538 A.2d 788 (1988). The court is required, first, to consider the plain language of the statute, which is to be given its ordinary meaning, provided that meaning is consistent with the legislative intent. Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999). If a statute can be interpreted in more than one way, it should be interpreted in light of the Legislature’s general intention, “in an integrated way without undue emphasis on any particular word or phrase, and if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.” Ibid. Finally, “[w]hen interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the *415 taxpayer.” Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 385, 476 A.2d 741 (1984).
The Borough argues that, by enacting Section 60, the Legislature intended to clarify and confirm the continued subjection to the local personal property tax of companies that had been subject to the FGRT as of April 1, 1997. The Borough also asserts that the Legislature could not have intended that the obligation of local telephone companies to pay the local personal property tax be dependent upon whether a company provided dial tone and access to 51% of a local telephone exchange in any given year, because such a determination would place an unreasonable burden on the assessor. Finally, at oral argument, the Borough contended for the first time that the federal requirement that Verizon permit its competitors access to Verizon’s facilities for collocation of their own equipment justifies the business personal property tax because Verizon is compensated by its competitors for collocation and its rates may include some part of the business personal property tax to which Verizon is subject.
The League expands upon the Borough’s contention that the Legislature intended to confirm that Verizon and the two other ILECs were forever subject to the business personal property tax. It notes that if the 51% test is an annual one, as Verizon contends, the local personal property tax on local telephone exchange companies would eventually cease as more of Verizon’s competitors provided more local telephone exchange service. The League maintains that it is unlikely that the Legislature intended that a source of direct revenue to municipalities be cut off despite the continued wear and tear on municipal streets and other facilities impacted by the business operations of Verizon and its competitors. As evidence of this intent, the League points to the first sentence of N.J.S.A. 54:4-1: “All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter.” It emphasizes that the Legislature’s use of the word “shall” indicates that the taxation of the property in question is mandatory. It also argues that there is no express exemption that would exclude *416 Verizon’s personal property from local personal property taxation. Somewhat contradictorily, however, the League also asserts that if Verizon’s contentions are accepted, an annual 51% test would amount to an exemption.
The League also points to a September 26, 2008 opinion letter from the Office of Legislative Services (“OLS”) in response to a September 3, 2008 inquiry from Assemblyman Upendra J. Chivu-kula. Assemblyman Chivukula prefaced his letter seeking data and information on the business personal property tax (“BPPT”) with his understanding that “in general terns, an ILEC will no longer be required to remit BPPT once that ILEC no longer provides ‘dial tone’ and ‘access’ to 51% of a local telephone exchange.” Howard K. Rotblat, a member of the OLS Revenue Section, responded that OLS found no support for the assemblyman’s understanding of the law. Rather, according to the OLS letter, the purpose of the statutory language and legislative intent of the amendments made by Section 60:
[W]as to describe only the then existing ILECs and to grandfather their business personal property into the local property tax base. Any change in their dial tone and accessAocal exchange business after the 1997 grandfathering was not meant to change whether their property was in or not in the local property tax base.
Because no legislative history or other authority was cited in the letter, it is not particularly persuasive. See, e.g., Commc’ns Workers of America, AFL-CIO v. Christie, 413 N.J.Super. 229, 250 n. 13, 994 A.2d 545 (App.Div.2010) (“We neither give special deference to the OLS opinion, nor do we disregard it. We are mindful that no current member of the Legislature has intervened in this matter, and that the legal opinion of OLS may not necessarily reflect the views of the entire legislative body.”).[7]
*417 Verizon contends that its construction of the statute is based on the plain language of the statute itself. It emphasizes that the statute defines a local exchange telephone company as “a telecommunications carrier providing dial tone and access to 51% of a local telephone exchange.” It maintains that, in using the word “providing,” the Legislature used the present participle, which must be interpreted here as “currently providing” dial tone and access. It relies on N.J.S.A. 1:1-1, which prescribes:
In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.
Verizon cites State, Dept. of Environmental Protection v. Exxon Corp., 151 N.J.Super. 464, 481, 376 A.2d 1339 (Ch.Div.1977), which refused to apply statutory language stated in the present tense as “discharging,” to past behavior or conduct. It also cites cases from other jurisdictions that have interpreted words ending in “ing” as meaning ongoing or continuing action. See, e.g., Laube v. Allen, 506 F.Supp.2d 969, 980 (M.D.Ala.2007) (distinguishing “proving” from “having proved”); United States v. Ketchum, 201 P.3d 928, 933 (7th Cir.2000) (“use of the present progressive tense, formed by pairing a form of the verb ‘to be’ and the present participle, or ‘ing’ form of an action verb, generally indicates continuing action”); Sabeti v. J.R., 80 Wash.App. 947, 912 P.2d 1062 (1996), review den. 130 Wash.2d 1003, 925 P.2d 989 (1996) (present participle form of verb “connotes a continuing process or activity, not one that has a finite beginning and end”); Pohl v. Commercial Ins. Co. of Newark, N.J., 36 Misc.2d 173, 232 N.Y.S.2d 92, 95 (N.Y.Sup.Ct.1962) (insurance contract using the present participle “falling” expresses a state of action in progress). Verizon concludes that unless a company continues to provide dial tone and access to 51% of a local telephone exchange, it is not a *418 “local exchange telephone company” required to pay tax under N.J.S.A. 54:4-1.
The court finds Verizon’s analysis of the statutory language to be persuasive. The court is also convinced that N.J.S.A. 54:4-1 and the entire design of the local personal property statutes evidences that the 51% test is to be performed annually rather than once. In its first sentence, N.J.S.A. 54:4-1 subjects property to taxation annually. See also N.J.S.A. 54:4-2.46 (providing that “[t]he true value of tangible personal property used in business subject to taxation shall be determined ... as of January 1 annually ..., which date shall be the date as of which the assessment is made with respect to the taxes payable in the succeeding calendar year”); N.J.S.A. 54:4-2.48 (requiring the annual filing of tax returns on or before September 1 by “any person owning tangible personal property used in business subject to taxation on the preceding assessment date”). In other words, the entire design of the personal property tax is based upon an annual determination of which companies are subject to tax, the value of their personal property and the appropriate assessment. There is no indication, either in the statute itself or in the legislative history, that the amendment of N.J.S.A. 54:4-1 by Section 60 was intended to change that statutory design.
It is also significant that the Legislature amended the language of N.J.S.A 54:4-1 to substitute “51% of a local telephone exchange” for the prior language, “substantially all of a local telephone exchange.” There was no reason to make that change unless the Legislature intended for the personal property tax to come to an end at the point when local telephone exchange service was competitive to the extent that at least half of the service provided with respect to a local telephone exchange was being provided by a company other than an ILEC. As demonstrated by the publicly available FCC data included in Verizon’s motion papers, “substantially all” of the local exchange service and access was still being provided by the ILECs (Baby Bells and other small independent companies) that had previously enjoyed a monopoly within their service areas. Notably, the Board of Public Utilities did not even begin to investigate whether local exchange competí *419 tion should be permitted in New Jersey until 1996, 28 N.J.R. 247(b) (Jan. 16, 1996), and the Board did not propose any regulations with respect to local exchange competition prior to the effective date of L. 1997, c. 162. The same three New Jersey ILECs would have been subject to the personal property tax regardless of whether the test was “substantially all” or “51%” of the local exchange service in a given municipality. Consequently, there was no need to change the language if the test was to have been applied only once, in 1997.
Limiting taxation to those companies subject to the FGRT as of April 1,1997 assured that no new competitors would be subject to the tax, since the FGRT was repealed by L. 1997, c. 162, § 77. In other words, after Verizon or one of the other two ILECs became something other than the dominant service provider for a local telephone exchange, no company would be subject to the local personal property tax: the tax would cease to exist with respect to personal property used in servicing that local exchange.
At oral argument, the court raised the possibility of a legislative intent to “phase out” the personal property tax. All parties rejected such an intent because, unlike other tax legislation, notably the transitional energy facility assessment (“TEFA”), N.J.S.A. 54:30A-100 to -126, there is no “phase out” language in N.J.S.A. 54:4-1. TEFA is applicable to electric light, heat and power companies that were subject to Chapter 5 of the FGRT, N.J.S.A. 54:30A-103, and was also enacted as part of L. 1997, c. 162, §§ 36 to 73. Verizon pointed out that, as originally enacted, TEFA provided steps by which the rate of tax would gradually be lowered, L. 1997, c. 162, § 67, before the tax finally expired in 2003. L. 1997, c. 162, § 38.[8]
The language used by the court during argument was imprecise. It was not the personal property tax that was to be phased out. More accurately stated, the 51% test indicated that the Legislature anticipated that the monopolies that had been enjoyed by the *420 three ILECs would be phased out through competition. The personal property tax, on the other hand, would suffer a slow death by attrition whenever Verizon or another ILEC ceased providing 51% of the dial tone and access of an exchange.
The court acknowledges that it is possible to construe N.J.S.A. 54:4-1 so that Verizon could again become subject to the personal property tax if it regained a share of a market and once more became the provider of 51% of the local exchange and access services, contrary to legislative expectations. The Borough and the League have argued that the 51% test was intended to be a one-time test because municipalities would have no way of knowing if Verizon later became the dominant provider of local telephone services. Whether Verizon could again become liable for the tax is not a question that is presently before the court. As to whether an assessor would have the information necessary to make such an assessment, the Director, Division of Taxation has been provided with ample statutory authority to promulgate rules and regulations with respect to the reporting of information necessary for assessors to determine personal property assessments within their taxing districts and could undoubtedly provide the necessary procedures and reports for such an eventuality. N.J.S.A. 54:4-2.45, -2.48, -2.50.
The court concludes that the plain language of the statute as amended by Section 60 supports Verizon’s construction of the statute. It is, therefore, not necessary to examine the legislative history. That history is, nevertheless, instructive.
As already stated, the title of L. 1997, c. 162 indicated that the purpose of the legislation was to “revise the taxation” of electric and gas public utilities and certain telecommunications companies, namely the ILECs, “in order to preserve certain revenues under transitions to more competitive markets.” The amendments to N.J.S.A. 54:4-1 at issue here were part of the bill as originally introduced. Nevertheless, the sponsors’ statement was virtually devoid of any reference to local telephone companies, and was primarily concerned with the deregulation of energy suppliers. *421 The sole reference to telecommunications companies was as follows:
In order to reduce the adverse economic effect of high energy taxation rates on all consumers, to prevent continued erosion of future tax revenues for annual distribution to municipalities due to changes in the natural gas and electric markets, and promote economic development and job growth in this state, this bill, effective for 1998, eliminates the gross receipts and franchise tax currently collected by electric, gas and telecommunication utilities. In its place, electric, gas and telecommunication utilities will be subject to the State’s corporation business tax.
[Statement, A. No. 2825 (March 13,1997).]
The introductory statement continued by mentioning TEFA, as well as sales and use tax on retail sales of electric and natural gas, stating: “Under a companion bill [enacted as L. 1997, c. 167], municipalities will be guaranteed, beginning in State fiscal year 1997, an annual State aid distribution from these replacement revenues.” Ibid, (emphasis added). No reference was made to the personal property tax. There was no indication that the personal property tax on local telephone companies was to be “preserved” indefinitely.
The amendments to N.J.S.A. 54:4-1 at issue here remained in the bill from its introduction through its enactment on July 14, 1997. However, the Assembly Policy and Regulatory Oversight Committee amended the bill to add a section directing the Board of Public Utilities to conduct a review of “all telecommunications taxes, including an analysis of alternative taxes, and evaluate their potential for providing property tax relief and their impact under the on-going transition to a more competitive and technologically diverse market.” First Reprint, A. No. 2825, § 76 (with Assembly APR committee amendments adopted June 12, 1997). The report was due on or before December 31, 1997. See also Assembly Policy and Regulatory Oversight Committee, Statement, A. No. 2825 (June 12, 1997) (summarizing committee amendments). The amendment remained in the bill as enacted. L. 1997, c. 162, § 76.
The foregoing indicates that the Legislature did not intend to perpetuate the personal property tax on local telephone companies. Rather, the legislative history confirms the intent gleaned from the plain words of the statute, namely that the tax was intended to continue through the transitional period of deregula *422 tion until there was healthy competition in a local telephone exchange market, at which point no company would be subject to the tax. Although the dii’ection to the Board of Public Utilities indicates that the Legislature may have wished to consider at a future date the effect of the changes made by Section 60 to the taxation of telecommunications companies on the local property tax burden, there is nothing in the legislation that supports the contention of the Borough and the League that the local personal property tax on the three ILECs was intended to be permanent.
“A court is duty-bound to give to a statute a construction that will support its constitutionality.” Whirlpool Properties, Inc. v. Director, Div. of Taxation, 208 N.J. 141, 151, 26 A.3d 446 (2011). Consequently, it must reject any construction of a statute that would be unconstitutional. Notwithstanding the State’s contention that this court should not consider Verizon’s constitutional challenge to the statute, the court concludes that it is necessary to consider that issue in order to resolve whether its construction of the statute is constitutional.
The State maintains that the court should not consider any of the constitutional issues raised by Verizon at this point in time. It asserts that, if Verizon’s construction of the statute is correct, then Verizon must still establish at trial that it in fact provides dial tone and access to less than 51% of a local telephone exchange. If it is successful in proving those facts, the State maintains that Verizon will have no standing to raise the constitutional issues, because it will not be a taxpayer, and the court’s determination of the constitutional issues will be no more than an advisory opinion.
The cases relied upon by the Attorney General do not support this proposition. For example, it cites In re Ass’n of Trial Lawyers of America, 228 N.J.Super. 180, 549 A.2d 446 (App.Div.), certif. denied, 113 N.J. 660, 552 A.2d 180 (1988), where, in the context of a declaratory judgment action brought by the Association of Trial Lawyers attacking the constitutionality of the Products Liability Act, N.J.S.A. 2A:58C-1 to -11, the Supreme Court stated:
[T]he jurisdiction of the courts may not be invoked in the absence of an actual controversy. Although there is no express language in New Jersey’s Constitution *423 similar to its federal counterpart which confínes the exercise of our judicial power to actual cases and controversies, we have long held that we will not render advisory opinions or function in the abstract. Nor will we entertain proceedings by litigants who are mere intermeddlers, interlopers or strangers to the dispute. In essence, “a plaintiff must have an interest in the subject matter in order to maintain a declaratory judgment action.” This relation to the cause “is necessary to a finding that a controversy, or at least uncertainty, exists as to the status or rights” of the litigants. In addition, the courts should not “decide or declare the rights or status of parties upon a state of facts which is future, contingent and uncertain.”
[Id. at 183-84, 549 A.2d 446 (citations omitted).]
By contrast, there is certainly a real controversy here, namely whether Verizon may be constitutionally subjected to the tax, without regard to whether it provides dial tone and access to 51% of an exchange. At issue is whether there will have to be a trial that may be lengthy and may involve quite technical issues. In the words of the Attorney General, Verizon does have “an oar in the water.”
The State also maintains that the court should refrain from reaching the constitutional issues because other municipalities that may be affected by the determination here should each have their own opportunity to defend the constitutionality of the tax. The court notes, first, that the interests of the Borough are identical to the interests of other municipalities who have been receiving revenue from local personal property taxes paid by Verizon. Second, amicus League is a nonprofit, unincorporated association created under the authority granted by N.J.S.A. 40:48-22. As recently stated by our Supreme Court:
The League represents all 566 of New Jersey’s municipalities. The League’s governing board consists of various elected municipal officials, its budget is partly financed through public funds, and its employees are members of the Public Employees’ Retirement System. Part of the League’s mission is to lobby for beneficial legislation and to file lawsuits furthering the interests of municipalities as a whole.
[Fair Share Bous. Ctr., Inc. v. N.J. State League of Municipalities, 207 N.J. 489, 492-493, 25 A.3d 1063 (2011).]
The court concludes that the interests of all 566 municipalities are adequately represented by the Borough as an adverse party, and the amicus League. The existence of this litigation is apparently well-known to municipalities throughout the State. The court is aware of several tax appeals where the parties are *424 awaiting the outcome of this case and where a personal property tax assessment against Verizon is an issue. One municipality has submitted a letter to the court “in support of the Amicus brief’ filed by the League. No municipality has sought to intervene here. In other words, notwithstanding the State’s concern, no other municipality has expressed an interest in participating in order to express its own views on the constitutionality of the personal property tax on local exchange telephone companies.
In sum, the court concludes that it must test the constitutionality of the two competing constructions of N.J.S.A. 54:4-1, keeping in mind that it is presumed that “ ‘the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner.’ The articulation of all of the essential elements demonstrating such legislative intent need not appear in the statutory language itself.” NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 26, 543 A.2d 10 (1988) (citations omitted).
V. Equal Protection
“[FJederal equal protection analysis traditionally involves different tiers or levels of review.” Greenberg v. Kimmelman, 99 N.J. 552, 564, 494 A.2d 294 (1985) (citations omitted). Because there are no fundamental or substantial rights, or suspect or semi-suspect classes implicated here, the appropriate level of review under the federal constitution is whether the differences in treatment rationally further a legitimate state interest. Armour v. City of Indianapolis, — U.S. -, 132 S.Ct. 2073, 2080, 182 L.Ed.2d 988, 1005 (2012); Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1, 13 (1992). The Legislature need not actually articulate the purpose or rationale supporting its classification. Id. at 15, 112 S.Ct. at 2334, 120 L.Ed.2d at 15-16. The state policy furthered by the difference in treatment must only be “plausible.” Id. at 11, 112 S.Ct. at 2332, 120 L.Ed.2d at 13 “This standard is especially deferential in the context of classifications made by complex tax laws” and the United States Supreme Court has afforded states great latitude “in making classifications and drawing lines which in their judgment produce reasonable *425 systems of taxation.” Ibid. See also Armour v. City of Indianapolis, supra, — U.S. at-, 132 S.Ct. at 2080, 182 L.Ed.2d at 1005 (same); Carmichael v. S. Coal and Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 1253 (1937) (as long as exemptions from taxation are based on “distinctions of degree having a rational basis,” they must be presumed to rest on a rational basis if there is any conceivable state of facts which would support them); Madden v. Kentucky, 309 U.S. 83, 87-88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940) (legislatures have broad discretion as to classification for taxation purposes); Taxpayers Ass'n of Weymouth Twp. v. Weymouth Twp., 71 N.J. 249, 283, republished as corrected, 80 N.J. 6, 40, 364 A.2d 1016 (1976), cert. den. sub nom,. Feldman v. Weymouth Township, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977) (under equal protection analysis, classification must be sustained if justifiable “on any reasonably conceivable state of facts” and “[i]t does not matter that the classification may be mathematically imperfect or that it results in some inequities in practice”). Administrative convenience “can justify a tax-related distinction.” Armour v. City of Indianapolis, supra, - U.S. at -, 132 S.Ct. at 2076, 182 L.Ed.2d at 1006.
New Jersey courts employ a balancing test in evaluating a claim that legislation violates equal protection under the New Jersey Constitution. Caviglia, v. Royal Tours of America, 178 N.J. 460, 472, 842 A.2d 125 (2004). “That test weighs ‘the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction.’ ” Id. at 473, 842 A.2d 125 (quoting Greenberg, supra,, 99 N.J. at 567, 494 A.2d 294). “[T]he means selected by the Legislature [must] ‘bear a real and substantial relationship to a permissible legislative purpose.’ ” Caviglia, supra, 178 N.J. at 473, 842 A.2d 125. “Although ... consideration of an equal protection claim under New Jersey’s balancing test differs analytically from the rational basis test, ‘the two approaches are substantially the same and will often yield the same result.’ ” N.J. State Bar Ass’n v. State, 387 N.J.Super. 24, 43, 902 A.2d 944 (App.Div.), certif. denied, 188 N.J. 491, 909 A.2d 726 (2006) (citations omitted).
*426 Following the amendments to N.J.S.A. 54:4-1 made by Section 60, the statute imposed the tax on a telecommunications earner providing dial tone and access to 51% of a local telephone exchange, and which had also been subject to the FGRT as of April 1.1997. Both then and now, there are exactly three telecommunications carriers subject to the tax. No company entering the local telephone exchange business after the January 1, 1998 effective date of the amendments can become subject to the personal property tax, because it was not subject to the FGRT as of April 1.1997.
If the statute is construed to apply the 51% test annually in each municipality where personal property used in the business of local exchange telephone companies is present, the statute creates one class of local telephone exchange companies that will never be subject to the tax, and a second class of companies, three in number, subject to the tax as of the effective date of the amendments, but able to leave the class if there is sufficient competition so that the taxpayer no longer serves 51% of the local telephone exchange.
Verizon on the one hand, and the Borough and the League on the other, agree that the legislative intent of the 1997 amendments to N.J.S.A. 54:4-1 was to continue to raise revenue for municipalities from local telephone companies. Verizon acknowledges that continuation of an existing tax for the purpose of raising revenue is a legitimate purpose, but argues that limiting the imposition of the tax to those companies subject to the FGRT as of April 1,1997 does not further the legislative purpose and is thus irrational because it excludes potential new competitors and potential new revenues. Verizon contends that even if the court concludes that the Legislature in 1997 had a rational basis for imposing the tax on only the dominant companies (those passing the 51% test), there is no rational basis for excluding companies that meet the 51% test in the future.
Verizon relies upon Mahwah Township v. Bergen County Board of Taxation, 98 N.J. 268, 486 A.2d 818 (1985), which considered the constitutionality of a statute freezing the class of municipalities *427 eligible for a rebate of a part of a municipality’s share of county taxes to those municipalities that had received the rebate in a prior year. The rebate was allowed where a municipality was located in a first-class county with a population in excess of 800,000 and had located within its borders 200 acres or more of land used and occupied by a state or county institution. Id. at 271, 486 A.2d 818. The court found that the classification by population was rational, but that the exclusion of municipalities who might subsequently meet the requirements of the statute was not. The statute limiting the rebate to municipalities who had received it previously was, therefore, unconstitutional. Id. at 293-94, 486 A.2d 818. Notably, the statute in Mahwah was attacked as special legislation in violation of N.J. Const., art. IV, § VII, par. 9. As the Court stated, however, “‘Lt]he test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws.’ ” Id. at 285, 486 A.2d 818 (citations omitted).
Verizon contends that, as amended by Section 60, N.J.S.A. 54:4-1 unreasonably subjects to the personal property tax only the three ILECs that were subject to the FGRT as of April 1, 1997, while excluding from taxation telephone companies providing exactly the same services. Verizon asserts that is an unreasonable classification that cannot serve any legitimate revenue-raising purpose.
N.J.S.A. 54:4-1 has imposed personal property taxes on telephone companies since its amendment by L. 1966, c. 138, § 1. Clearly, the purpose of Section 60 was to do something more than simply raise revenue.
In enacting L. 1997, e. 162, the Legislature apparently contemplated that deregulation would result in the former public utilities being on substantially the same tax footing as their new competitors, as indicated not only by the eventual extinction of the personal property tax on local telephone companies and the phaseout of TEFA, but also by the repeal of the FGRT and subjection of the former public utilities to the CBT. See L. 1997, c. 162, § 77 (repealing Chapter 4 of the FGRT applicable to local telephone *428 companies); L. 1997, c. 162, § 6 (amending Chapter 5 of the FGRT, N.J.S.A. 54:30A-49, to make it inapplicable to gas, and electric light, heat and power corporations); see also N.J.S.A 54:10A-3(a) (exempting from the CBT corporations taxed on the basis of gross receipts).
The court concludes that there was a rational basis to continue to impose the personal property tax only on those local telephone companies that had, for many years, enjoyed a monopoly over the provision of local telephone service in their franchise areas. The Legislature could reasonably assume that the three ILECs enjoyed a substantial competitive advantage as a result of their former monopolies; that they continued to be the dominant users of public rights of way and facilities; and that, as a transitional measure, it was reasonable to continue to impose the tax on only those companies until such time as they no longer enjoyed a competitive advantage, as evidenced by the fact that they were no longer providing 51% of the dial tone and access to an exchange.
By way of contrast, there is no rational basis for a distinction between the three ILECs and its competitors if N.J.S.A 54:4-1 is construed to require a one time “51% test,” so that the three companies would perpetually be subject to tax, even if they eventually held only a small share of the market, and their successful competitors would never be subject to tax. Such a construction would limit potential revenue rather than raise it; new dominant competitors would make greater use of public rights of way and facilities than the former monopolies; and, a perpetual tax would not serve the purpose of providing a transition to deregulated, competitive local telephone exchange service.
The court also rejects the Borough’s contention that collocation fees received by Verizon from competitors using its facilities warrants a perpetual tax on Verizon’s personal property. Those fees are income to Verizon, taxable under the CBT and not through the personal property tax, and do not provide a basis for any distinction in the personal property taxation of companies providing local telephone service. Rather, the fact of collocation *429 emphasizes that Verizon’s competitors have personal property within the taxing jurisdiction that is not subject to the personal property tax. The only real basis for the distinction between Verizon and its competitors is as a transitional tax based upon the competitive advantage enjoyed by Verizon. Once that basis disappears, there is no rational basis to continue the tax, unless Verizon’s competitors are also subject to it.
The Borough has also argued that it would be an administrative impossibility for it to determine Verizon’s competitors that might be subject to the personal property tax, and offers that as justification for its contention that the Legislature intended to impose the tax only on the three ILECs. As observed earlier by the court, the Legislature has provided the Director, Division of Taxation with ample statutory authority to promulgate rules and regulations with respect to the reporting of information necessary for assessors to determine personal property assessments within their taxing districts. See N.J.S.A. 54:4-2.45, -2.48, -2.50. It is no more or less an administrative difficulty to assess tax against Verizon than it is to assess tax against any other owner of personal property that provides dial tone and access to an exchange.
Finally, the Court rejects the League’s contention that the tax on only ILECs is justified by the ILECs’ long-time use of municipal rights of way and facilities, resulting in wear and tear and increased municipal maintenance costs. As pointed out by Verizon, a telephone company must obtain the consent of the owner before erecting poles, lines and other equipment in, under, along, or over a public right of way. N.J.S.A. 48:17-8. Verizon further points out that, under the terms of its agreement with the Borough, Verizon is obliged to bear the costs related to its use of public rights of way in the Borough.
In sum, the court concludes that its construction of N.J.S.A. 54:4-1 comports with the Equal Protection Clause, U.S. Const. amend. XIV, § 1, and that the construction offered by the Borough and the League does not. The result is the same under N.J. Const, art. I, § 1. As construed by the court, the amendments *430 made by Section 60, which have the effect of distinguishing between ILECs and their new competitors, bear a real and substantial relationship to a permissible legislative purpose. Taxpayers Ass’n of Weymouth Twp., supra, 80 N.J. at 43, 364 A.2d 1016.
VI. Special Legislation
Whether Section 60 is special legislation that violates N.J. Const, art. IV, § 7,119 depends upon a three-part test: (1) a determination of the purpose and object of the legislation; (2) whether, under the facts of the case, any one thing is excluded that should be included; and (3) if the resulting classification can be said to rest on any rational basis. Mahwah, supra, 98 N.J. at 283, 486 A.2d 818, citing Vreeland v. Byrne, 72 N.J. 292, 370 A.2d 825 (1977). As concluded above, a purpose and object of Section 60 was to continue the revenue from the personal property tax during the transition to a deregulated market. Section 60 accomplished that purpose by continuing the tax on the companies that formerly enjoyed a monopoly in the provision of local telephone exchange services until such time as they were no longer the dominant provider of such service, as measured by the 51% test. Given that purpose, no other provider of local telephone exchange services was irrationally excluded from the tax. Accordingly, Section 60 is not special legislation.
The court cannot find a rational basis for excluding Verizon’s competitors if Section 60 was intended to impose the tax on Verizon and the other two ILECs forever. As argued by Verizon, excluding potential taxpayers does not serve the purpose of raising revenue. It does not serve the purpose of serving as a transition from monopoly to deregulation. If adopted by the court, the construction of N.J.S.A. 54:4-1 proposed by the Borough and the League would compel the conclusion that Section 60 is special legislation.
VII. Uniformity Clause
Finally, Verizon maintains that the imposition of the personal property tax on it violates the Uniformity Clause, N.J. *431 Const, art. VIII, § 1, 11(a), which mandates that property (both real and personal), shall be assessed “under general laws and by uniform rules.” It is Verizon’s position that the Uniformity Clause requires that personal property be taxed according to its characteristics or the use to which it is put, but not according to the status of its owner. It contends that Verizon’s status as a taxpayer subject to the FGRT on April 1,1997 is an inappropriate basis for classifying its property as subject to the personal property tax.
Even under the more rigorous provisions of the Uniformity Clause pertaining to real property, which require real property in a taxing district to be assessed according to the same standard of value and at the general rate of the taxing district, our courts have taken a liberal view of transitional tax provisions designed to move in the direction of uniformity. See, e.g., City of Newark v. Essex County Board of Taxation, 309 N.J.Super. 476, 492, 707 A.2d 493 (App.Div.1998) (finding constitutional a statute providing for taxes on a formerly tax-abated residential structure to be computed by multiplying the taxes otherwise due by the common level ratio until such time as a municipal revaluation could be implemented).
It is clear, however, that the case law construing the Uniformity Clause as it pertains to personal property requires only that the Legislature’s classifications are reasonable. “[T]he intent was to leave in the Legislature a broad power to classify personal property for either exemption or preferential treatment.” Switz v. Kingsley, 37 N.J. 566, 586, 182 A.2d 841 (1962). “The Legislature is free to tax personal property in any way so long as the classification is reasonable and the property is assessed under general laws and by uniform rules.” General Motors Corp. v. City of Linden, 150 N.J. 522, 526, 696 A.2d 683 (1997).
Once again, the court concludes that a classification of property based on its ownership and use by a taxpayer in the local telephone exchange business is rational, where that taxpayer continues to enjoy a competitive advantage by virtue of its former monopoly of that business, provided that the tax to which the property is subjected is a transitional one that will end at the point *432 that the competitive advantage is ended. The court therefore rejects Verizon’s contention that N.J.S.A. 54:4-1, as amended by Section 60, and as construed by the court, violates the Uniformity Clause.
In sum, the court construes N.J.S.A. 54:4-1, as amended by Section 60, to require an annual determination as of the assessment date as to whether a local telephone exchange company provides dial tone and access to 51% of a telephone exchange. As construed, the statute does not violate the Equal Protection Clause of the United States Constitution, or similar guarantees of equal protection under the New Jersey Constitution, or the prohibition against special legislation contained in N.J. Const., art. IV, § 7, par. 9, and does not violate the Uniformity Clause. Accordingly, Verizon’s motion for partial summary judgment is granted, and the Borough’s motion is denied.

 Verizon provided the same notice to four other municipalities in addition to Hopewell in 2008 with respect to tax year 2009. Only Hopewell assessed a business personal property tax.

 In its motion papers, Verizon identified the two other ILECs as United Telephone Company of New Jersey and Warwick Valley Telephone Company.

 The court notes that one of the Committee members was a representative of NJ Bell.

 The Business Personal Property Tax was later repealed by L. 1993, c. 174, § 1.

 L. 1940, c. 4, codified at N.J.S.A. 54:30A-16 to -29 ("Chapter 4”) originally imposed a tax on telephone and telegraph companies, water companies, and sewer system companies. L. 1940, c. 4, §§ 3, 7. A franchise and gross receipts tax was imposed on electric and gas companies by L. 1940, c. 5, codified at N.J.S.A. 54:30A-49 to -67 ("Chapter 5”). Sewer system companies were made subject to the provisions of Chapter 5 rather than Chapter 4 by L. 1952, c. 264. Water companies were made subject to the provisions of Chapter 5 by L. 1961, c. 93.

 The information is available at http://www.state.nj.us/treasury/taxation/ taxexemption.shtml (last visited 6/7/12). The Division's web page lists "the public utility companies that are entitled to the sales and use tax exemption under N.J.S.A. 54:32B-8.47(a) which exempts receipts from the sale or use of energy and its transportation to or by a utility corporation or person that was subject to the provisions of N.J.S.A. 54:30A-16 et seq. as of April 1, 1997, or currently or formerly subject to taxation pursuant to N.J.S.A. 54:30A-49 et seq., for their own use and consumption,'' for calendar year 2010. Ibid.

 Subsequent to the oral argument in this matter, the League submitted for the court's consideration a memorandum dated December 23, 2010 from Robert H. Levin, Esq., Chief, Local Government Section, OLS, apparently responding to a request from Assemblymen Webber and DeCroce for information as to whether a company must verify that it is no longer subject to taxation of its personal properly. Mr. Levin opined that: “We do not have an answer on the administration of the loss of a majority dial tone provider since we do not interpret the law (R.S. 54:4-1) to take into consideration annual changes to the status of a *417 pre-1997 local exchange telephone company.” Again, no legislative history or other authority is cited as the basis for the opinion.

 Subsequent to its original enactment, the Legislature extended TEFA through 2013. N.J.S.A. 54:30A-102; see L. 2001, c. 433, § 1 (through 2006); L. 2004, c. 43, § 1 (through 2010); L. 2008, c. 32, § 2 (through 2013).